## J. D. TARDY. v. THE STATE.

### No. 2916. Decided February 17, 1904.

**1.—Jury Law—Challenge for Cause.**

Where jurors were challenged for cause, because they stated on their voir dire that they had formed an opinion as to the guilt or innocence of the defendant from what they had heard, and that it would take different evidence to change their opinion; but the court in explaining defendant's exception to said jurors, stated that the jurors had been fully questioned under the court's direction and had already stated that they had no such opinion as would in any way affect their verdict and that the court was satisfied that the jurors were fair and impartial and had no opinion which would influence their verdict, there was no cause for challenge.

**2.—Argument of Counsel.**

Unless appellant requests special charge to disregard objectionable language of district attorney, the court can not say that it is of such character as would authorize a reversal.

**3.—Charge of the Court—Not Proper Practice.**

It is never proper for the court to single out the testimony of any wit-

ness and give a charge specially thereon, and there was no error on part of the court to refuse to do so by a requested charge.

#### 4.—Same—Former Prosecutions—Limited to Credibility.

There was no error in admitting testimony as to former indictments against defendant, where the court charged the jury that the testimony could be considered for the sole purpose of affecting defendant's credibility as a witness, as this instruction informed the jury sufficiently that such testimony could not be considered for any other purpose.

#### 5.—Same—Self-Defense—Provoking Difficulty.

Bare intent and purpose to provoke a difficulty does not deprive defendant of the perfect right of self-defense; as he must do some act or something at the time of the difficulty that does provoke the same, see charge held to be erroneous in not properly submitting this principle.

#### 6.—Same—Apparent Danger.

Where the evidence shows an actual attack was made by the deceased upon defendant, there is no error in a charge which limits his right of self-defense to an attack by deceased and not to apparent danger.

#### 7.—Change of Venue.

Where the evidence does not show that such a degree of prejudice existed as precluded a fair and impartial trial of defendant, the discretion exercised by the trial court in such matters will not be disturbed.

Appeal from the District Court of Caldwell. Tried below before Hon. L. W. Moore.

Appeal from a conviction of murder in the second degree; penalty, imprisonment for five years in the penitentiary.

The principal facts are substantially as stated in appellant's brief, as follows:

W. S. Wierman, State witness, testified that on the day of the difficulty he rode on defendant's wagon with him from the Katy depot to town; that defendant told him that as soon as he delivered the freight on his wagon he was going back to the depot; that this was about an hour before the killing.

Bob Blundell, State witness, testified that about 4 o'clock on the day of the killing defendant borrowed a pistol from him; that in January before he had gotten his pistol.

Lloyd Blundell, State witness, testified that he went after Bob Blundell's pistol for defendant and gave it to him wrapped up.

Jim Watkins, a negro, State witness, testified that he was a freighter for Mack Storey; that some freight came to regular customers of Mr. Storey and defendant and some that came to others, which was called "grab freight," and the first freighter to grab it was entitled to haul it; that he had been off the dray line for some time but had just gone back; that along about the first of the year he and defendant had some words over "grab freight;" that when he broke the seal of the car he always got in first and the morning of the day of the difficulty he got in first, and when the local came in about 2:30 or 3 o'clock of the evening of the difficulty he got in the car first; that defendant left and went up town about 3 o'clock, and when he left witness heard him say "he would be fixed for the whole push," and the deceased was not there at the time and witness did not remember to have seen him there at all;

that defendant returned in about thirty minutes and about five or ten minutes before the killing.

J. E. Roberts, State witness, testified that he saw defendant around the depot about an hour before the killing and heard him say "they could not drive him around; that he would do them up or fix their business for them."

Mark Randall, State witness, testified that he was porter at the Katy depot, that the local, the day of the killing, came in about 1:30 or 2 o'clock; that witness McDaniel, a brakeman, and Jim Watkins were in a car of the local unloading freight when Tardy came; that he spoke offensively about Thompson (deceased), and in reply to a remark of witness said, "from now on I will be fixed for the whole damn push;" that defendant loaded some freight on his wagon and went to town and returned in about thirty minutes; that when the shooting began he was in the car and looked out and defendant and deceased were scuffling; that he did not see the bat thrown; that witness had sawed the bat off that morning and placed it just inside the depot door.

Frank Shannon, State witness, testified that just before the killing he and deceased were in a car checking out freight; that he saw defendant about the car, but did not hear him make any remarks about deceased particularly; that he heard him say to Shultz that he was "not going to try to get any more grab freight, that there was not any there for him," and that "the whole damn push had got it in for him and he was fixed for the whole damn push," and at the time deceased was in the car; that shortly afterwards deceased walked up to where defendant was and called him, saying, "Old man, come here," and defendant turned around, and he called again, saying, "Old man, come here; I want to talk to you," and to this defendant replied, "I have got no talk for you, you old blue-bellied son of a bitch," and deceased reached down and picked up a stick (the bat exhibited to the jury) and started out towards Tardy, and Tardy then pulled his six-shooter; that Thompson ran in the freight house and defendant came on back down about the door and fired and witness saw them in a scuffle."

G. W. Mills, defendant's witness, testified that he was justice of the peace at Lockhart and went to the Katy depot shortly after the killing and examined the place of the difficulty and surrounding; that he found Thompson inside the freight room where he fell and blood from the door across the platform; that he found a large bat or billet of wood about the size of a baseball bat on the ground near the depot door and a dent of about an eighth of an inch in a car evidently having been made by the bat being thrown against it; that deceased was a large man, good muscular build.

Joe Vogel, defendant's witness, testified that he was at the Katy depot at the time of the difficulty, and the first that attracted his attention was that he heard a stick hit a car and saw defendant pull his

gun and go to shooting; that the stick was thrown from the freight room and Mr. Thompson was in there at the time.

R. E. Mayer, defendant's witness, testified that he was across the street when the shooting began and walked over to the depot, and defendant gave him his pistol and said at the time that "Thompson was coming at him with a bat and he shot him."

Defendant testified that he was in the dray business running two wagons, one of which he drove himself; that in the morning of the day of the difficulty he went to the Katy local, and the big negro Jim Watkins was there and broke the seal of the car and pushed the door open just enough to get in and get the "grab freight," and stood in the door with his back against one side and his hand on the other making it useless for him to try to get any of the "grab freight;" that he got some freight belonging to some of his regular customers, but before leaving for town some men who were going to open a saloon agreed to divide their freight with him and Mr. Storey and to be there after awhile when the local was unloaded; that while up town with the freight he borrowed the pistol, but never thought of any difficulty with deceased, but because he had trouble with the negro Jim Watkins, who had gone back on the local wagon and kept up his old tricks, and he got it to defend himself against this negro; that he had no intention at the time he got the pistol of using it on deceased; that he had the pistol in his breast pocket wrapped up in paper and was about the depot about an hour before the difficulty; that he went back to the depot from town to get freight; that there were six loads in the pistol, but he only fired five; that after discovering that he could get no "grab freight" he turned to leave and remarked to the boy that if there was no freight for his regular customers he would go, etc., when deceased came out of a car and said "Mr. Tardy, come here;" that he said, "No, I won't," and deceased went into the house and got the stick and came towards defendant with it drawn back in a striking attitude, and he said "Hold on," but that he did not stop and defendant fired; that he did not try to hit him the first shot, but heard something strike the car and then began firing rapidly until deceased turned to leave him; that when he shot the second time deceased was coming towards him in an attitude that made him believe he was going to hit him with the bat; that when he fired the third shot deceased had hold of him grabbing at his pistol; that during the shooting they scuffled all over the platform; that when he fired first time he was stepping backwards.

*W. K. Baylor* and *Moore, Hearrell & Moore,* for appellant.—Appellant was entitled to a charge on self-defense and real and apparent danger without qualification or limitation, and the court's charge, qualifying and limiting his right of self-defense to his intention at the time of arming himself, about one hour before the difficulty, is error.

Cartwright v. State, 14 Texas Crim. App., 486; White v. State, 23 Texas Crim. App., 154; Hall v. State, 66 S. W. Rep., 783; Airhart v. State, 40 Texas Crim. Rep., 473; Winters v. State, 37 Texas Crim. Rep., 582; Shannon v. State, 35 Texas Crim. Rep., 2; Morgan v. State, 34 Texas Crim. Rep., 222; Drake v. State, 8 Texas Ct. Rep., 645.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of five years.

Bill of exceptions number 1 complains that during the selection of the jury Lee Bear and Jim Taylor were duly and legally summoned talesmen, after the exhaustion of the special venire, and were each asked the following question by appellant's counsel: "Whether he had formed an opinion as to the guilt or innocence of the defendant from what purported to be the facts in the case, and from what he had heard of the case; and each juror answered in the affirmative that he had formed an opinion. And each juror was further asked if it would require other and different evidence to change his opinion. Each answered it would." Whereupon defendant's counsel challenged each of said jurors for cause; and the court overruled the challenge and compelled defendant to peremptorily challenge said two jurors. And defendant took two other jurors, to wit, Jim Richburg and Dick Winfrey, whom he would have challenged peremptorily but for his challenges having been exhausted by the action of the court in declaring the two jurors Bear and Taylor qualified jurors. The court approved this bill with the following explanation: "The court had already asked the two jurors the statutory question and in answer to which they said they had formed no such opinions as would in any way affect their verdict; and such opinion as they had formed was only such as every man would form, based merely upon rumor. And the court further asked each of said jurors, if there was established in their minds such an opinion from hearsay or otherwise as would influence their verdict; and each answered they had not. Each of said jurors answered that nothing that they had heard would influence them in their verdict. And the court being of opinion that each of said jurors was impartial and had no such opinion as would influence their verdict, ruled they were qualified to serve as jurors." The explanation of the court shows there was no error in the ruling.

Bill of exceptions number 4 complains of the following language used by the district attorney in closing his argument to the jury: "Gentlemen of the jury, you acquit this defendant on these facts, and it will cause more murders to follow." To which statement of counsel defendant objected by his attorney, and asked that said language be

withdrawn from the jury, and that the jury be instructed not to consider the same. Which objection was overruled, and defendant excepted. No special charge was requested by appellant requiring the jury to disregard this argument. We can not say it is of such a character as would necessarily prejudice appellant to that extent as would authorize a reversal.

Appellant asked the court to give the following charge: "You are further instructed in this cause, that defendant is a competent witness in his own behalf; and you are the sole judges of his testimony, and you should judge and weigh it as you would the testimony of any other witness." This charge was refused. In this there was no error. It is never proper for the court to single out the testimony of any witness and give a charge similar to the one asked. Defendant's testimony, under the law, stands as any other witness; but it is not proper for the court to charge thereon.

In motion for new trial appellant complains of the following portion of the court's charge: "The testimony relating to former indictments against the defendant was admitted for the sole purpose as it relates to the credibility of the defendant as a witness." The objection to said charge being that the same failed to instruct the jury that such evidence was introduced and admitted for the sole purpose of affecting defendant's credibility as a witness, and should be considered by them for that purpose alone. The record shows that defendant had been previously tried in Arkansas for murder and acquitted; and had also been previously charged with various thefts, and acquitted. The court in the above charge tells the jury that the testimony can be considered for the sole purpose of affecting his credibility. We take it that this can not be construed otherwise than as a statement that it can be considered for no other purpose. However, it is better and proper to so state as appellant insists. If the jury can consider it but for one purpose, it necessarily limits it to that purpose. We do not think there is such error in the charge complained of authorizing a reversal.

Appellant also objects to the following portion of the court's charge: "Upon the subject of self-defense, you are further charged that, if you believe from the evidence beyond a reasonable doubt that defendant armed himself with the intent and purpose to provoke a difficulty with the deceased, as a pretext for killing him; and if you further believe from the evidence beyond a reasonable * * * that defendant with malice express as before defined, did shoot and kill D. L. Thompson, though his own life or serious bodily injury was threatened in such difficulty, then defendant would not be entitled to the plea of self-defense, but such killing would be murder in the first degree." This charge is erroneous, and under all the authorities it is laid down that bare intent and purpose to provoke a difficulty does not deprive defendant of the perfect right of self-defense. He must do some act or some-

thing at the time of the difficulty that does provoke the same. For a discussion of this question, see Matthews v. State, 58 S. W. Rep., 86.

Appellant also complains of the following charge: "But if the purpose of defendant in arming himself, if such be the fact, was to protect himself against another, with no purpose to attack the deceased or to provoke a difficulty with him for the purpose of killing him, then defendant would be justified, if the deceased did attack him in such a manner as to produce in his mind a reasonable apprehension of his life or serious bodily injury as before defined and instructed." Appellant's objection to this charge is, because the same limits appellant's right of self-defense to an attack by deceased, and not to apparent danger; and because the court intimates to the jury in said charge his own doubt as to defendant's testimony as to his (defendant's) purpose in arming himself. The evidence on the part of appellant shows an actual attack was made by deceased upon appellant, and hence this portion of the charge is pertinent to the evidence introduced. As stated above, the purpose of defendant in arming himself is not an incriminative fact per se, where the issue of provoking the difficulty is in question. But he must do some act at the time to provoke the difficulty before the bare fact of preparation would in any sense forfeit his right of self-defense. However, the court tells the jury here that if he did arm himself without any such purpose, and deceased attacked him, he would have the perfect right of self-defense. We can not see how appellant can justly complain of this charge.

The only other error assigned which we deem necessary to pass upon is the failure of the court to change the venue. The bill presenting this matter is quite voluminous. A careful reading thereof does not convince us that the court committed any error in refusing to change the venue. It shows local prejudice, as we understand, in the town of Lockhart, where the killing occurred; but outside of that, it does not appear that such a degree of prejudice existed as precluded a fair and impartial trial of defendant in that county; and does not present such a state of facts as would authorize us to interfere with the discretion of the trial court in these matters.

For the error pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*