### NAT AIRHART v. THE STATE.

#### No. 1669.　Decided May 3, 1899.

**1.　Murder—Provoking a Difficulty—Self-Defense—Charge.**

On a trial for murder, a charge of court was erroneous which instructed the jury, in substance, that if they believed defendant sought deceased with intent of provoking or bringing about a difficulty for the purpose of killing deceased or doing him some serious bodily injury, the law will not permit him to avail himself of the law of self-defense, although he may have been compelled to act upon the defensive during the progress of the difficulty. The charge is erroneous in making the guilt of the defendant depend on his act and purpose in seeking the difficulty; whereas, in law, his guilt or innocence would depend on the acts done by him at the time of the meeting, looking to his preceding conduct to characterize or lend significance to his acts at the time of meeting.

**2.　Same.**

In order to provoke a difficulty, the defendant must willingly and knowingly use some language or do acts reasonably calculated to lead to an affray or deadly conflict; and unless the acts were clearly calculated or intended to have such effect, the right of self-defense is not compromitted, even though the party armed himself and went there for the purpose of a difficulty.

APPEAL from the District Court of Kaufman. Tried below before Hon. J. E. DILLARD.

Appeal from a conviction for manslaughter; penalty, two years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Ira Keith, by shooting him with a pistol, on the 1st day of June, 1898.

The opinion states the facts sufficiently.

*Gossett & Young* and *Lee R. Stroud,* for appellant, as to error of the court in its charge upon provoking a difficulty, cited Cartwright v. State, 14 Texas Crim. App., 502; Shannon v. State, 35 Texas Crim. Rep., 2; Winters v. State, 37 Texas Crim. Rep., 582.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at confinement in the penitentiary for a term of two years; hence this appeal.

In the view we take of this case, it is only necessary to notice the exceptions to the charge of the court on self-defense, in connection with a charge on provoking the difficulty. In order to a proper understanding

of the court's charge on this subject, we will state substantially the case as presented by the testimony. The testimony shows that deceased and appellant both lived at or near the town of Kemp, in Kaufman County; that a few days before the homicide deceased had used some abusive language with reference to defendant, in his absence. It is shown that the trouble grew up between them in reference to an election of one of the precinct officers, and that deceased told several parties that on the Saturday before the homicide he met defendant and told him that he was a "son of a bitch," or a "damn son of a bitch," and that "he took it like a man." Defendant was informed of this on the same day, or a day or two afterwards. On the succeeding Wednesday appellant, some time in the evening, approached deceased, who was sitting or standing near his brother, Joe Keith, and another party, stating that he wanted to see him. Deceased made no reply to this, and appellant repeated his request. Deceased went out to where he was, when appellant asked him if he used the language about him that he had heard. Deceased said that he had, and that he would say to his face what he had said to his back. So far we do not believe there is any controversy between the State's witnesses and the defendant's witnesses. Some of the State's witnesses testified that at this juncture deceased advanced a step or two towards appellant, and appellant stepped back, and immediately drew his pistol and fired at deceased. Deceased was in the act of turning from defendant at the first shot, and turned and retreated, and defendant fired on him three times after he retreated. Further than merely advancing on appellant, the State's witnesses indicate no hostile demonstration on the part of deceased. Some of them state that he had his left hand twirling his mustache, while his right was hanging by his side. Some of the defendant's witnesses, however, state that he had his right hand in the neighborhood of his right pants pocket. None of them, however, except the defendant himself, suggest that he ran his hand into his pocket. Defendant himself testified that when deceased advanced on him he put his hand in his pocket. We quote from the defendant's testimony on this point as follows: After appellant had called deceased out in the street, he said: "Ira, what about this talk you have been making about me?" And he said, 'What about it?' And I said, 'That talk that you made to Bill Grubbs. He said you told him you cussed me out, and called me a God damn son of a bitch right up to my teeth, and I took it like a man.' And Keith said, 'God damn you! you are one.' And when he said it he stepped towards me just one step, and I stepped back just one step, and he said, 'I called you that, and, God damn you! you are one.' And he started towards me, and I stepped back and told him to stand back two or three times, and he kept advancing on me. When we first went out in the street he had his left side just a little bit to me, and had his right hand on his right pants pocket, and was trying to work something out of his pocket with his fingers; and when he called me a damn son of a bitch he run that hand right square in his pocket, and I drew my pistol and fired as fast as I could shoot." Appellant also stated that Frank McKinney had told him on the

preceding Sunday that deceased said he was a son of a bitch, and that he was going to kill him "before next Saturday." . Appellant also testified that he went to see deceased in order to get him to explain himself and to take back what he said, if he said it; that he intended to make him take it back, and if he would not take it back, he intended to have a fist and skull fight with him. We have thus stated sufficient of the testimony to show the nature of the homicide, and the element of self-defense in the case. As stated, the court gave a charge on self-defense, but in connection with that charge, gave a charge on provoking a difficulty, and also, in the same connection, instructed the jury on the right of appellant to go and see deceased on a peaceful mission with reference to the remarks he had heard deceased had made in regard to him. This was in accordance with the doctrine announced in Shannon v. State, 35 Texas Criminal Reports, 2.

It is insisted, however, by appellant, that the court committed material error to his prejudice in the charges referred to. We will not quote the charges in extenso, but merely enough thereof to indicate the vice complained of. The court announced as a legal proposition that, if one seeks a meeting with another for the purpose of provoking or bringing about a difficulty for the purpose of killing such person, then such party seeking the difficulty, if the encounter ensues, is not allowed to avail himself of the law of self-defense, although in the difficulty he may have acted upon the defensive, and then instructed the jury, in substance, that if they believed, etc., that Nat Airhart sought the meeting with Ira Keith with the intent of provoking or bringing about a difficulty for the purpose of killing deceased or doing him some serious bodily injury, then the law will not permit him to avail himself of the law of self-defense, although he may have been compelled to act on the defensive during the progress of the difficulty. Now, it will be seen that the court, in this charge, makes the guilt of the defendant depend on the act of seeking the difficulty by appellant for the purpose of slaying deceased, and his guilt or innocence is not at all made to depend upon what he may have done when he found or met deceased, whereas, in our view of the law, the whole question of his guilt or innocence depends on his acts then done. Of course, we would look to his preceding conduct to characterize or lend significance to his conduct at the time of the meeting. And in the succeeding charge the same vice is manifest. This charge is predicated on the idea of appellant seeking the deceased in order to engage in a fist fight or affray with him, and proceeds on the idea that, if such was his purpose, and the difficulty ensued between him and deceased after they met, he could not set up self-defense, but would be guilty of manslaughter. Now, no matter what his purpose was in seeking deceased, if, when he met him, he did nothing to provoke a difficulty, and deceased assaulted him, under our view of the law his right of self-defense would be perfect. Both of said charges were upon a critical phase of the case; that is, if appellant was entitled to a charge on self-defense at all, he was entitled to a fair charge (and we can not say that he was not, in view of his own testimony), pre-

senting this view of the case according to the rules of law. Where the doctrine of provocation is to be given in any case, we have heretofore held that the court should be able to lay his hand on the testimony which authorized such a charge. We believe there was such testimony here, for the appellant not only sought the meeting, but his language and conduct after he found deceased indicated that he had sought that meeting for the purpose, and by his own testimony he concedes that he intended to make deceased take back the remark, or have a fist and skull fight with him. He was not to be tried for merely seeking out the deceased. but for his acts after he had found him. The judge's charge should have presented this issue squarely to the jury, and not have authorized them to convict him for merely seeking deceased, regardless of whether he did any act after he found him calculated to provoke a difficulty. As said by this court in Cartwright v. State, 14 Texas Criminal Appeals, 502: "In order to provoke a difficulty, the defendant must also willingly and knowingly use some language or do acts reasonably calculated to lead to an affray or deadly conflict; and, unless the acts are clearly calculated or intended to have such effect, the right of self-defense is not compromitted, even though the party armed himself, and went there for the purpose of a difficulty." And see Morgan v. State, 34 Texas Crim. Rep., 222; Winters v. State, 37 Texas Crim. Rep., 582. It is not necessary to discuss other assignments, but, on account of the errors above pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*