## GABE HALL v. THE STATE.

### No. 2242. Decided January 30, 1901.

**1. Assault With Intent to Murder—Evidence as to a Conspiracy.**

On a trial of a husband for an assault with intent to murder his wife, where it appeared that the parties had separated; that divorce proceedings had been instituted; that the wife had gone with her children to live with her father; that she sent defendant word requesting him to call and see her; that when he called, not seeing but one of the children, he announced his intention to return and see the others; that upon his return his wife met him with a pistol and attempted to shoot him, whereupon he fired and shot her in self-defense: Held, testimony to the effect that the wife, her father and his brother-in-law had each made serious threats against defendant, and had entered into a conspiracy to waylay and take his life, was competent and should have been admitted. Such evidence tended to explain the act of the wife in approaching defendant with a pistol in hand and shows that she was the aggressor, brought on the deadly conflict and fired the first shot in pursuance of such conspiracy.

**2. Same—Charge—Self-Defense.**

On a trial for assault with intent to murder, where defendant's right of self-defense had accrued, he had the right to use any unlimited means to protect

his life or person from serious bodily injury; and a charge of court which limits his right of self-defense in such a case to the use of "any reasonable and necessary means at his command to prevent injury" to himself, is too restrictive.

**3. Same.**

On a trial for assault with intent to murder, where it appeared that the alleged assaulted party attempted to shoot defendant and defendant caught her arm, and the pistol was fired in the air, a charge of court was erroneous which limited defendant's right of self-defense to the act of the assaulted party shooting at him. If the assaulted party attacked him and attempted to shoot defendant, he had the right to shoot her, as much as if she was shooting immediately at him.

**4. Same—Perfect Right of Self-Defense.**

On a trial for assault with intent to murder, where the charge of the court proceeded upon the idea that if appellant went upon the premises where his wife was living with her father, although he did so at her request, and yet, after reaching there, was forbidden by his wife to enter, and he did enter, he was an intruder and forfeited his right of self-defense. The charge was erroneous. If he went to the place at the request of his wife, it certainly was not a wrongful act. And, where an act is wrongful but not illegal, nor intended to provoke a difficulty nor reasonably calculated to do so, and the party kills to save himself from death or serious bodily injury, his right of self-defense remains perfect and complete, and he would be justified and guilty of no offense.

**5. Same—Charge—Manslaughter—Aggravated Assault.**

On a trial for assault with intent to murder, where the evidence, even from the State's standpoint, is cogent, that if a homicide had been committed the offense would have been of no higher grade than manslaughter, the court's charge should submit the issue of aggravated assault.

APPEAL from the District Court of Collin. Tried below before Hon. J. E. DILLARD.

Appeal from a conviction of assault with intent to murder; penalty, five years imprisonment in the penitentiary.

The indictment charged the appellant with an assault with intent to kill Susan Hall, on the 20th day of June, 1900. Susan Hall was defendant's wife.

The opinion states the salient features of the evidence.

*Garnett, Smith & Merritt, J. M. Pearson,* and *Jones & Eastham,* for appellant, filed an able and elaborate brief and argument. Their objections to those portions of the charge of the court, which are discussed in the opinion, are thus formulated:

1. In order for the defendant to have forfeited his right of self-defense, he must have gone to the house in question with the intention to provoke a difficulty with his wife, and thereby get a pretext to kill her or inflict upon her serious bodily injury; and when he got there he must have done some act, or said some word, reasonably calculated to provoke the difficulty, or bring about the occasion.

2. If the defendant and his wife got into a difficulty after he had gone to the house in question, and she made an assault upon him, he would not have been deprived of his right of self-defense, unless he went to the house in question for the purpose of provoking the difficulty or bringing about the occasion, and after he went there, he said or did something reasonably calculated to bring about the difficulty.

Franklin v. State, 30 Texas Crim. App., 640; Cartwright v. State, 14 Texas Crim. App., 486; Ball v. State, 29 Texas Crim. App., 126; Carter v. State, 37 Texas Crim. Rep., 404; McCandless v. State, ante, p. 58; Grayson v. State (Texas Crim. Rep.), 57 S. W. Rep., 808; White v. State, 23 Texas Crim. App., 164; Jones v. State, 17 Texas Crim. App., 611; Shannon v. State, 35 Texas Crim. Rep., 2; Tollett v. State (Texas Crim. Rep.), 55 S. W. Rep., 575; Young v. State, 41 Texas Crim. Rep., 442.

3. The rule of law in such cases is that there must be a purpose behind the provocation and impelling to it. And notwithstanding the defendant may have provoked the combat, or produced the occasion, by his own wrongful acts, yet, if these acts were not clearly calculated or intended to have such effect, his right of defense is not thereby compromitted. White v. State, 23 Texas Crim. App., 164.

4. If the defendant went to the house in question upon the previous invitation of Susan Hall, his right of self-defense would not have been forfeited.

5. If the appellant went to the house in question for the purpose of seeing his children, he would not thereby have forfeited his right of self-defense. Favro v. State, 59 S. W. Rep., 885.

6. The intention with which the defendant went to the house in question, was a question of fact which should have been submitted to the jury.

The entire charge is erroneous in this: The jury are nowhere told that if the defendant went to the house in question and that his object and purpose in going there was a lawful one, either to see his children, or in compliance with a previous request of Susan Hall for him to come there and that his object and purpose in going there was not to provoke a difficulty or bring about an occasion to kill his wife and it was not calculated to do this, then his right of self-defense, if unlawfully assaulted, was perfect under the law.

*Rob't A. John,* Assistant Attorney-General, for the State. [No briefs for the State found with the record.—Reporter.]

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of assault with intent to murder, and his punishment assessed at five years confinement in the penitentiary.

The assault was made by appellant upon his wife, and the State's case was that he fired on her three times, inflicting two serious wounds. His theory was that his wife fired first, and thus made the assault, and he fired two shots in self-defense. A brief statement of the evidence discloses: He and his wife had been separated about three of four months at the time of the difficulty. That prior to the difficulty he had instituted a suit against her, on the ground of adultery, for divorce. At the time of the difficulty the wife was living with her father. Appellant on the day of the difficulty hired a buggy and team, and started to the country for the purpose of attending to a business mat-

ter. Reaching his father's residence, he received information that his wife had requested him to call to see her. He changed his course and called, in obedience to the request. He had a conversation with her, and met one of his children. He inquired for his other children, and was informed by his wife that they were not in. He left, announcing that he would call later to see his children. He drove away, and subsequently returned, hitching his team out of sight, and sought to approach the house unobserved, and from a different direction, because he believed that his wife was secreting the children so that he could not see them. Upon entering the yard, his wife, armed with a pistol, met him, and forbade him coming in the house. He remarked that he came to see his children, and was going in, and, if she desired to kill him, to do so, but they had had trouble enough already. The State's theory from this point is that defendant notified his wife that he intended to kill her, saying she ought not to live, and proceeded to shoot at her three times; two of the three shots taking effect, one in the left side, and the other in the right side. Appellant's testimony is to the effect that his wife approached him with a pistol and attempted to shoot, but he succeeded in throwing her arm up, and the pistol fired above his head; that he immediately shot; that while trying to prevent her shooting again he fired the second shot, and this weakened her so he was able to take her pistol, which he did, and immediately left. He further testified that his wife, in attempting to fire her pistol again, was prevented by the hammer falling on that part of his hand between the thumb and index finger of his left hand. That portion of his hand was bloody and wounded, as indicated.

During the trial appellant offered to prove by Mrs. Sallie Wright, the sister-in-law of prosecutrix, that she had heard her father-in-law, Moses Wright, her brother-in-law, John Brown, and her sister-in-law, Susan Hall, prosecutrix, each make serious threats against the life of defendant; that they had entered into a conspiracy to waylay him and take his life; that this occurred subsequently to the institution of the divorce proceedings, and prior to the date of the difficulty. This testimony should have been admitted. The theory of the State, and the charge in the main, was predicated upon the theory that defendant purchased the pistol the day before the difficulty, and, armed with it, went to the residence of his father-in-law, where his wife was then residing, for the purpose of taking her life. Appellant's theory was that he went at the request of his wife, communicated to him on the morning of the difficulty, as well as to visit his children. Appellant's theory was self-defense. Now, if he went to the residence of his wife at her invitation, and upon her request, he was certainly innocent of any wrongful act. If she and her father and her brother-in-law had threatened to take his life, and she was the first to make any advance towards the difficulty when she came from the room with the pistol, it was very important for the jury to have this testimony, as it would tend to explain her act in approaching appellant with pistol in hand. The invitation may have been within the scope and part of the conspiracy,

and the means used to secure his presence at the time and place of the difficulty. If it was a subterfuge to so obtain his presence, then the State's theory of trespass and wrongdoing on his part in going upon the premises of his father-in-law would be seriously impaired, if not utterly destroyed; and it would show that she originated and brought on the difficulty, and was the aggressor in the deadly conflict, intentionally, from its inception. She obtained the pistol for use upon the appellant, and was advised by her attorneys to. use violence upon him if he came to see his children. She met his acceptance of her request with the pistol and a peremptory order not to enter the premises. His theory was that she began the difficulty, by approaching with the pistol, and also by firing the first shot, and that he did not display a pistol until after she manifested her intention of killing him.

The charge on self-defense was limited to the use of any reasonable and necessary means at his command to have prevented his adversary from taking his life or inflicting upon his person a serious bodily injury. This charge was quite restrictive. Where a party's life is in danger, or where the perfect right of self-defense has accrued, the party has the right to use any means within his power to protect his life or his person from such serious bodily injury, even to the taking of the life of his adversary.

The court also instructed the jury that, if they believed that appellant went to the home of Moses Wright, where Susan Hall, the alleged assaulted party was residing, and into the yard and on the porch of said Moses Wright's residence, and the said Susan Hall did not forbid defendant to enter the yard and come into the house, and the jury further believe that after defendant went into said yard and went on the porch, if he did, Susan Hall assaulted defendant by shooting at him with a pistol, and defendant then shot Susan Hall one or more times with a pistol, and that at the time he did so, if he did, he believed, and had the right reasonably to believe, etc., they should acquit. Objections were urged to this charge, in that it was upon the weight of evidence, and restricted defendant's right of self-defense against the assault made upon him by the prosecutrix's shooting at him with a pistol. This charge is not correct. While it is true that the testimony shows that Susan Hall attempted to shoot at him, he prevented her doing so by elevating her arm, and the pistol was fired in the air. If Susan Hall made an attack upon him with the pistol, and attempted to shoot, he had the right to shoot—as much so as if she was shooting immediately at him.

There are some charges given by the court to the effect that if appellant entered the house and yard of Moses Wright, where his wife was living, the occupant of said house had the legal right to use sufficient force to compel or drive the intruder therefrom, "and, if necessary to protect such house or yard from such intrusion, if the occupant had no other adequate means at his command, he may take the life of such intruder," and, further, that if defendant, under such circumstances, persisted in entering the yard, after having been forbidden to

do so, and the difficulty occurred by reason of such entry, then the right of self-defense was cut off. And further in the same connection, in substance, if defendant and his wife had separated and she was residing at her father's, then defendant would have no right to enter the yard or house of his father-in-law, when forbidden to do so by his wife, Susan -Hall, and that if he went to the house, under such circumstances, and his wife told him not to enter the yard or house, and he did enter in spite of the command of his wife, and thereby a difficulty was brought about with his wife, defendant can not avail himself of self-defense. That the occupant of a house has the right to defend against unlawful intrusion may be conceded, and where this is the case the party defending the property does it under the restrictions of the statute, and must resort to all other means of ejecting the intruder before committing a homicide, though he is not required to retreat. But this is not the standard by which appellant's right of self-defense is gauged, as we understand the facts of this case. If appellant went to the house for the purpose of raising a difficulty with his wife, or with the intention of shooting her or inflicting upon her a battery, and did some act to provoke a difficulty with her, unquestionably his right of self-defense would be abridged. But if, as he contends, he went to the place upon the request of his wife, and did no act to bring on or to provoke a difficulty, and she met him with a pistol, and ordered him from the yard or house—either or both—and he refused to go, and she undertook to shoot, under these circumstances his right of self-defense would not be forfeited. Franklin v. State, 34 Texas Crim. Rep., 286; Carter v. State, 37 Texas Crim. Rep., 403; McCandless v. State, ante, p. 58; Grayson v. State (Texas Crim. App.), 57 S. W. Rep., 808; White v. State, 23 Texas Crim. App., 164; Shannon v. State, 35 Texas Crim. Rep., 2; Tollett v. State, 55 S. W. Rep., 575; Young v. State, 41 Texas Crim. Rep., 442. We understand these decisions decide, in substance, that if the wrongful act, whether illegal or not, be done with intent to provoke the difficulty, in order to take life, and the difficulty is thereby provoked, and the necessity to take life produced, his right of self-defense is forfeited, and the killing is murder, though done to save the slayer's own life. If the wrongful act be in violation of law, and reasonably calculated to produce the occasion, but with no intent to take life, the right of self-defense would be abridged, and the offense manslaughter. If the act, though wrongful, be not illegal, and not intended to provoke a difficulty, nor reasonably calculated to do so, and the party kills to save himself from death or serious bodily injury, his right of self-defense remains perfect and complete, and he would be justified and guilty of no offense. And to this end a party may even seek his adversary for the purpose of having an explanation or peaceful solution of their trouble, though he be armed at the time to protect himself against the attack of his adversary in case it should come. Shannon's case, 35 Texas Crim. Rep., 2. If appellant then went to the

house of his father-in-law at the request of his wife, with no ulterior object of killing her or making upon her an attack of any sort, his right of self-defense would not be abridged; and if she, under those circumstances attacked him with a pistol, he would have the legal right to defend himself, even of taking life. In the entire charge the court proceeded upon the idea that if appellant went on the premises where his wife was living, although at her request, and after reaching there was forbidden by his wife to do so, he forfeited his right of self-defense. We can not agree to this proposition. It is a question of fact, under the different circumstances presented by this evidence, as to whether or not he had compromitted his perfect right of self-defense. If he went to the place in obedience to the request of his wife, it certainly could not have been a wrongful act. If the Shannon case, supra, is correct, he had a right to talk to his wife peaceably and quietly about their troubles; and if she, under any of these circumstances, made an attack upon him with a pistol and shot at or attempted to shoot him, he had a right to defend himself.

Appellant sought to correct some of the errors in the court's charge by requested instructions, which were refused, and exception reserved. Upon another trial the law of self-defense should be pertinently applied to the facts, and the jury should be left to decide the question of aggravated assault. If the killing had occurred, the evidence is very cogent, from the State's standpoint, that the homicide would have been of no higher grade than manslaughter. At least, this issue is made apparent by the facts. We deem it unnecessary to notice other questions, as they may not arise upon another trial. For the reasons indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*