## J. J. LOCKHART v. THE STATE.

### No. 3848. Decided May 27, 1908.

**1.—Murder—Evidence—Dying Declarations—Res Gestæ.**

Dying declarations must not be in reply to questions suggesting answers; and the rule as to res gestae is that it must be the act speaking spontaneously through the mouth of the declarer, and not in answer to questions suggesting answers or a narration of events, and simply because they are stated at the time, but they must have some relevancy upon the issue involved.

**2.—Same—Evidence—Declarations of Deceased.**

Where upon trial for murder the deceased, some twenty minutes after he was shot, declared in response to a question propounded to him why he was shot, that he was shot for nothing, the same was admissible in evidence. Davidson, Presiding Judge, dissenting.

**3.—Same—Evidence.**

Where upon trial for murder the deceased, some twenty minutes after he was shot, in response to a question whether he did not keep defendant from shooting him, declared that he tried to take the gun away from defendant but the first shot numbed him so that he could not do so, the same was inadmissible in evidence, inasmuch as it was in response to a leading and suggestive question.

**4.—Same—Charge of Court—Threats—Self-Defense.**

Where upon trial for murder the evidence raised the question of self-defense and communicated threats, it was reversible error to charge the jury that they could consider the reasonableness of defendant's belief that deceased intended to inflict death and etc., and that they could consider such threats together with the relative strength of the parties, and any real or apparent attempt of deceased to draw or use a knife or deadly weapon, and that he begun the difficulty and first attacked the defendant.

**5.—Same—Charge of Court—Provoking Difficulty.**

Where upon trial for murder the State's theory was that the defendant drew his pistol and killed the deceased, and the defendant's theory was that he was trying to make friends with the deceased, when the latter attacked him with a knife and defendant was forced to act in self-defense in killing him, the issue of provoking the difficulty was not in the case, and a charge thereon was error.

Appeal from the District Court of Cherokee. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of murder in the second degree; penalty, sixteen years imprisonment in the penitentiary.

The opinion states the case.

*King & King, J. C. Fagan* and *Norman & Shook,* for appellant.—A declaration, in articulo mortis, is not admissible in evidence if the same is but a statement of opinion or conclusion or is such a statement as would not be evidence if the party was alive and testifying in the case. And if relied upon as a dying declaration the party offering same must show that at the time the statement was uttered the deceased was rational and sane, conscious of impending death and the same must have been voluntarily made, and if such predicate is not first shown the statement is inadmissible as evidence. Wharton's Criminal Evidence, 9 Ed. sec., 294; Greenleaf in Evidence, sec. 156; Lister v. State, 1 App., 739; Watson v. State, 50 Texas Crim. Rep., 171; 16 Texas Crim. Ct. Rep., 587; Phillips on Evidence, p. 297.

Where, in the trial of a criminal case, an issue is by the evidence made favorable for the defendant, it is the duty of the trial court to give the jury a clear, distinct and affirmative charge, presenting such defense and a failure to do so is error, and the evidence in this case showing that deceased had shortly prior to the fatal difficulty threatened to take the life of appellant which fact was made known to him and that at the time of the difficulty the deceased committed an act which manifested his intention to carry into execution such threats, it was incumbent upon the court to give an affirmative charge in behalf of defendant upon the issue of self-defense based upon threats, and the failure to so charge the jury is reversible error. Fielding v. State, 48 Texas Crim. Rep., 334; 13 Texas Ct. Rep., 618; Watson v. State, 50 Texas Crim. Rep., 171; 16 Texas Ct. Rep., 587; Cline v. State, 6 Texas Ct. Rep., 318; Sebastian v. State, 42 Texas Crim. App., 84; article 713, White's Annotated Penal Code.

There is a distinction between beginning a difficulty and provoking a difficulty, and where the evidence on the part of the State presents the theory that the defendant without provocation approached deceased, drawing his pistol stating that he intended to kill him and began shooting as soon as his pistol was drawn, and that of the defense presents the theory that defendant approached deceased for the purpose of asking an explanation of his former conduct towards him, whereupon deceased became enraged and shoved defendant down and attempted to draw a knife when appellant for the first time drew his pistol and shot, there is no issue of provoking the difficulty presented. The question and only question is as to who began the difficulty. Such being the case it is error to charge upon provoking a difficulty. Smith v. State, 48 Texas Crim. Rep., 203; 13 Texas Ct. Rep., 297; Burnett v. State, 51 Texas Crim. Rep., 20; 18 Texas Ct. Rep., 788; Casner v. State, 2 Texas Ct. Rep., 559; Sanders v. State, 50 Texas Crim. Rep., 430; 17 Ct. Rep., 375; Airhart v. State, 40 Texas Crim. Rep., 470; 51 S. W. Rep., 214; Beard v.

State, 45 Texas Crim. Rep., 522; 81 S. W. Rep., 34; Winters v. State, 37 Texas Crim. Rep., 582; 40 S. W. Rep, 305; Hall v. State, 42 Texas Crim. Rep., 444; 60 S. W. Rep., 769; Collett v. State, 55 S. W. Rep., 573; Hjeronymus v. State, 46 Texas Crim. Rep., 157; 79 S. W. Rep., 313; Airhart v. State, 40 Texas Crim. Rep., 470; 51 S. W. Rep., 214.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was given sixteen years in the penitentiary under a conviction of murder in the second degree.

Several bills of exception were reserved to the ruling of the court admitting in evidence certain statements made by deceased twenty or thirty minutes after he was shot, some of them perhaps within less time.

1. Mrs. Ollie Branch, widow of the deceased, was permitted to state that some five minutes after the difficulty in which her husband was injured, he asked her to hold up his head, and in response to an inquiry propounded to him by her, as to whether or not he was badly hurt, stated that he was, and then further stated that he wanted her to pay some small debts he owed. This was allowed with the qualification that the matters stated in the bill were in connection with other facts tending to show deceased was conscious of impending death, and it was also admitted as res gestæ. The statement of facts is also referred to by the judge in connection with this qualification. In connection with this bill, some of the other bills may be noticed, as they present practically the same questions, or at least to some extent the same questions. The witness, N. W. Wheeler, testified that he got to the deceased some twenty minutes after he was shot, and that deceased, in response to questions propounded to him by Mrs. N. W. Wheeler as to what he was shot for, stated, "For nothing," and that he further stated, in response to a question propounded to him by Mrs. N. W. Wheeler, if he did not try to keep him from shooting him, he stated that he tried to take the gun away from him, but the "first shot numbed him so he could not." Objections were urged also to his testimony. The court qualifies this bill by referring to the statement of facts. Another bill recites that the witness, N. W. Wheeler, testified that some twenty minutes after deceased was shot, in answer to a question propounded to him by Mrs. Wheeler as to why he was shot, stated, "For nothing." Another bill recites that the same witness, Wheeler, testified that some twenty minutes after deceased was shot, his wife, Mrs. Wheeler, asked him the following question: "Did you not try to keep him from shooting you," and the deceased replied, that he tried to get the gun away from him, but that "the first shot numbed him so he could not." The court qualifies this bill by referring to the statement of facts. Mrs. Wheeler testified, over objection, that she got to the deceased some twenty minutes after he was shot, and that deceased in response to questions propounded to him by her, as to what he was shot

about, stated, "For nothing," and that he further stated in response to a question propounded to him by her, if he did not try to keep him from shooting him, that he tried to take the gun away from him, but the first shot numbed him so he could not. This is qualified by referring to the statement of facts, and further that it occurred within twenty minutes from the time the deceased was shot. The court in admitting this testimony seems to have acted upon the thought that it was dying declarations, and if not, then res gestæ. Dying declarations are not admissible except with reference to the cause of the death; that is, where the death is the subject of inquiry. Extraneous matters or expressions that do not relate to the cause of the killing could not come within the rule of dying declarations. But it will be observed, with reference to this testimony, at least to most of it, that the witness, Mrs. Wheeler, propounded a direct and leading question to the deceased, as follows: "Did you not try to keep him from shooting you?" This formal question would seem to exclude it under our statute in regard to dying declarations, as well as under the rule of res gestæ. We do not propose to here enter into a discussion of the statute with reference to dying declarations. It provides specially that the dying declarations must not be in reply to questions suggesting answers; and the rule as to res gestæ is that it must be the act speaking spontaneously through the mouth of the declarer, and not in answer to questions suggesting answers, or as a narration of events. These statements of the deceased were made in direct response to questions suggesting the answers that were received. It would seem from the qualification to one or more of these bills that the trial judge entertained the idea that anything that was stated by the deceased at the time would be res gestæ, whether it was relative to the issue or not. Res gestæ is admitted like other testimony, which seems to grow out of a rule of necessity, but this rule of necessity must be governed by the same rules governing the introduction of other testimony, as far as its relevancy and materiality is concerned. If statements sought to be introduced as res gestæ are relevant to or explanatory of some issue in the case where testimony would be admissible to explain, or admissible for any purpose, res gestæ would be governed by the same rule as would the admissibility of any other relevant fact. Statements of parties engaged in a trouble, or declarations or acts or matters occurring at the time of the supposed transaction are not admissible as res gestæ simply because they were stated at the time, but these acts and declarations when sought to be used on the trial of a party accused must have some relevancy or materiality or bearing upon the issue or issues involved in such trial. "The statement must not only accompany an act, but also tend to characterize or explain it. The mere fact that a statement accompanies an act does not make it a part of the res gestæ of that act if it does not characterize the act itself. A statement or declaration is not admissible as res gestæ merely because it accompanies an act, but the act which it accompanies and explains must be the one which is being

litigated, or must be otherwise relevant to the issue. A statement which is merely narrative of a past and completed transaction is not part of the res gestæ as this term is used under the verbal act rule, but it may be narrative in form and still be of the res gestæ if it refers to and explains the transaction then going on. The mere fact, however, that such a statement has some relation to the act which it accompanies does not make it a part of the act." 11 Enc. of Ev., pp. 382–3–4; and numerous cases cited in the footnotes on those pages; so numerous it is unnecessary here to collate them. With reference to the testimony of Wheeler in which he narrates what occurred between his wife and deceased, the statement will show as follows: "Now, your wife, had she gotten up there in the meantime? A. She got up there about that time and began questioning him, and wanted to know what he was shot about, and he said, 'For nothing' as well as I can remember." Here the defendant interposed numerous exceptions, which, being overruled, the following occurred: "Q. What was it your wife asked Ollie Branch? A. Asked him what was the cause of him shooting him. Q. What was his answer? A. He said, 'for nothing,' and she says was he mad at you, and he said, 'Yes, ma'am.' Q. Was anything else said about shots and about the shooting? A. My wife said, 'Didn't you try to keep him from shooting you,' and he said he tried to take the gun away from him, but the first shot numbed him so he could not." In regard to the expression of the witness where she makes the deceased use the statement that "He killed him for nothing," to the answers of Mrs. Wheeler, the court first stated he was inclined to sustain the objection to it because it was an opinion, but at the conclusion of the trial permitted it to go to the jury. As presented by the bill and record my brethren are of the opinion the testimony or expression that appellant "Killed him for nothing" is admissible under the following authorities: Brande v. State, 45 S. W. Rep., 17; Connell Jr. v. State, 45 Texas Crim. Rep., 142; 10 Texas Ct. Rep., 890; Pierson v. State, 18 Texas Crim. App., 524; and Sims v. State, 36 Texas Crim. Rep., 154. But the other portion of the conversation, to wit: "Didn't you try to keep him from shooting you, and he said he tried to take the gun away from him but the first shot numbed him so he could not," is inadmissible, inasmuch as it was in response to a leading and suggestive question. The writer is of the opinion that the expression of the deceased to the effect that appellant killed him for nothing is equally inadmissible, and that it is but an expression of opinion or conclusion of the declarant, not even reaching the dignity of a shorthand rendering of the facts, and without going into a further discussion of the matter will cite the following authorities: 11 Ency. of Ev., p. 344; DeWalt v. Houston E. & W. T. R. Co., 22 Texas Civ. App., 403; State v. Ramsey, 48 La. Ann., 1407; Bateson v. State, 46 Texas Crim. Rep., 34; Medina v. State, 43 Texas Crim. Rep., 52; 63 S. W. Rep., 331; White's Annotated Code of Crim. Proc., sec. 1008, for collation of authorities; Indianapolis St. R. Co. v. Whittaker, 160 Ind., 125;

Kaelin v. Com., 84 Ky., 354. In the Bateson case, supra, it was held incompetent for the State to prove by the witness that deceased told him to tell his wife good-bye, and by another witness, "They murdered me without cause." And it is also said, "A witness can only state matter involved in a dying declaration to which the deceased could testify if alive and a witness on the stand and could not give in evidence matters of opinion." In Hughes' Admr. v. L. & N. R. Co., 104 Ky., 774, it was said, a statement by the conductor just after the brakeman fell, that "the bridge got him," is inadmissible as part of the res gestæ, being a mere statement of opinion, not a statement that he saw him knocked off the train. In Watson v. State, 50 Texas Crim. Rep., 171; 16 Texas Ct. Rep., 588, it was held error for the witness to be contradicted or impeached upon the statement that the defendant shot deceased for nothing, on the ground that it was but the expression of an opinion by the witness if he made such statement. This rule has been expressly approved by this court in Taylor v. State, 38 Texas Crim. Rep., 552; Collins v. State, 4 Texas Ct. Rep., 349; Price v. State, 43 S. W. Rep., 96. The writer, therefore, is of the opinion that the expression of the deceased introduced through the mouth of the witness, Mrs. Wheeler, to wit: that defendant killed him for nothing, is but an expression of opinion, and should have been excluded.

The question of threats played rather a prominent part in the trial, and it may be that a sufficient amount of the testimony has been stated already to show that a charge on threats was necessary. There is other evidence, however, in the record suggesting other threats made by deceased against appellant, some of which were introduced through the mouth of the wife of appellant as having occurred on Tuesday evening before the homicide on Sunday, and also threats made by the deceased against appellant on Tuesday morning prior to the homicide. The court charged the jury as follows: "If, before the killing, the deceased had made threats against the life of defendant and defendant knew, or had been informed, of such threats, you are instructed that while the same would not justify the defendant in attacking or killing the deceased, yet, if you believe the deceased on the occasion of the alleged killing began the difficulty and first attacked the defendant, then, in judging of the reasonableness of the defendant's belief that deceased intended to inflict death or serious bodily injury upon him by such attack, you may consider such threats, together with the relative strength of the parties and any real or apparent attempt of deceased to draw or use a knife or other deadly weapon, as well as all the other circumstances of the case." Our statute, article 713, Penal Code, provides: "Where a defendant accused of murder seeks to justify himself on the ground of threats against his own life, he may be permitted to introduce evidence of the threats made, but the same shall not be regarded as affording a justification for the offense unless it be shown that at the time of the homicide the person killed by some act then done manifested an intention to execute the threat so made," etc. A com-

parison of the statute with the charge given would indicate, in our judgment, that the court committed serious error in the charge. It is only necessary under the statute that, where the threat has been made, same shall not be regarded as affording a justification for the killing, unless it be shown at the time of the homicide that the person killed by some act then done manifested an intention to execute his threat. The charge given by the court goes far beyond this, and to the effect of depriving appellant practically of any threats that may have been made against his life. Not only under the charge given would the deceased have to make some demonstration or manifested rather by some act his purpose of executing his threat, but before appellant could have the benefit of this statute the jury were required to believe in the reasonableness of defendant's belief of this attack, and in addition to this, before they could give him the benefit of the threat and the act manifesting an intention to execute same, they must look to the relative strength of the parties and to any real or apparent attempt of the deceased to use a knife or other deadly weapon as well as all the other circumstances of the case. Therefore, the jury must believe that at the time of the homicide the deceased had made or done some act manifesting his intention to execute his threats so made, but that act must have been an attack upon the person, thus at once cutting off appellant from all apparent danger and requiring the jury to believe that there must be an actual attack made upon him before they could give him the benefit of the law of threats, and not only so, but the right of self-defense, from this standpoint, was further curtailed by a charge on the relative strength of the parties, and any real or apparent attempt of deceased to draw or use a knife or other deadly weapon, and all other circumstances of the case. If defendant was correct with reference to the fact connected with threats along this line of self-defense, he had undertaken to make friends; that deceased had rejected these advances and offers, and had seized him or pushed him back, and finally threw him down upon his back and got on him, stating to him at the time that he got out of the buggy and seized him by the collar and about the throat, that he intended then to kill him, and that he then had him in his power, etc. We are of opinion that this charge was clearly erroneous. See Fielding v. State, 48 Texas Crim. Rep., 334; 13 Texas Ct. Rep., 619; Watson v. State, 50 Texas Crim. Rep., 171; 16 Texas Ct. Rep., 587; Cline v. State, 6 Texas Ct. Rep., 318; Sebastian v. State, 42 Texas Crim. Rep., 84. Also Alexander v. State, 25 Texas Crim. App., 260; Williams v. State, 22 Texas Crim. App., 497.

The court charged the law with reference to provoking a difficulty. We have stated sufficiently the facts in regard to this matter, we believe, to show that this issue was not in the case. If the State's theory is correct, under the testimony of Mrs. Branch, this was a case of murder. Under the theory of the defense, it was one in which self-defense was strongly presented. We are not discussing the issue as to manslaughter, but only referring to the question of provoking a difficulty.

Appellant, under the State's evidence, threatened before leaving his buggy to kill the deceased and got out of the buggy with his pistol and went to where he was and killed him. The fact that deceased jumped out of the buggy to protect himself against the use of the pistol, or, in other words, to secure the pistol to keep from being shot, did not suggest provoking a difficulty. If appellant's theory is correct, he approached the deceased in a friendly way with the olive branch requesting a cessation of the trouble and renewal of friendship, which was rejected by the deceased who immediately sprang from his buggy and made a violent attack upon him, and threw him upon the ground and undertook to get his knife out of his pocket for the purpose of killing him. These facts from either standpoint do not suggest that issue as we understand the law of provoking a difficulty. There are other facts that we might detail as to the nature of the wounds, etc., bearing upon the question, but we deem it unnecessary. In support of the proposition that provoking a difficulty is not in the case, see Smith v. State, 48 Texas Crim. Rep., 203; 13 Texas Ct. Rep., 297; Burnett v. State, 51 Texas Crim. Rep., 20; 18 Texas Ct. Rep., 788; Casner v. State, 2 Texas Ct. Rep., 559; Sanders v. State, 50 Texas Crim. Rep., 430; 17 Texas Ct. Rep., 375; Airhart v. State, 40 Texas Crim. Rep., 470; 51 S. W. Rep., 214; Roberts v. State, 48 Texas Crim. Rep., 378; 13 Texas Ct. Rep., 692. As perhaps bearing more directly upon the issue, see Beard v. State, 45 Texas Crim. Rep., 522; 81 S. W. Rep., 34; Winters v. State, 37 Texas Crim. Rep., 582; 40 S. W. Rep., 305; Hall v. State, 42 Texas Crim. Rep., 444; 60 S. W. Rep., 769; Collett v. State, 55 S. W. Rep., 573; Hjeronymus v. State, 46 Texas Crim. Rep., 157; 79 S. W. Rep., 313; Airhart v. State, 40 Texas Crim. Rep., 470; 51 S. W. Rep., 214.

There are some questions suggested with reference to arguments and speeches made by attorneys for the prosecution, as well as application for continuance. It is not necessary to discuss these questions in view of the disposition of the case. They may not occur upon another trial.

For the errors indicated, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*