### BERTHA COTTOM v. THE STATE.

No. 6823.    Decided April 26, 1922.

**Murder—Provoking Difficulty—Evidence—Charge of Court—Self-Defense.**

To deprive the defendant of the right of self-defense, it is essential that the words of the defendant, or her conduct, be reasonably calculated to have provoked the deceased to have attacked her, etc., which essential element was omitted in the court's charge; besides, the evidence in the instant case did not raise the issue of provoking the difficulty. Following Reese v. State, 49 Texas Crim. Rep., 242, and other cases.

Appeal from the District Court of Bell. Tried below before the Honorable M. B. Blair.

Appeal from a conviction of murder; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*Henry A. Yeager,* and *W. C. Taylor,* for appellant.—On question of court's charge. Nix v. State, 45 Texas Crim. Rep., 507; Humphrey v. State, 165 S. W. Rep., 589.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, PRESIDING JUDGE.—Conviction is for murder; punishment fixed at confinement in the penitentiary for a period of twenty years.

The defensive theories are reflected by the testimony of the appellant. She and her husband resided upon the farm of Mr. Hodge. On the day previous to the homicide, they had purchased some groceries and left them at the home of Hodge. She requested her husband to go for the groceries. He answered her in an ill-tempered manner but started in the direction of Mr. Hodge's house, saying that he was going for the groceries and she followed him in order that she might aid him. While waiting for the groceries, deceased went to the garage, where he was called by some friends, and she called to him and asked him if he was not going hime, and he said: "Oh, make me go home if you think you can." After some colloquy upon the subject, she, insisting upon the deceased going home and

he, putting it off in an ill-tempered manner, said: "If you put your hands on me again, I will knock your brains out." She again approached, and he began beating her and she got his thumb in her mouth and held it with her teeth. He called upon a friend, who was present, for his knife, but did not obtain it. She then said: "Come on, lets go home" and he answered: "I am going to kill you this minute." She started on with him when he said: "There is not any use of me pulling you over these rocks this way and you sick. I am in the wrong; you turn me loose and let me go back and get the groceries." She promised to comply with this request if he would not bother her or whip her, but upon her releasing his thumb, he knocked her down with his fist and began choking her. Mr. Hodge came and made them stop fighting. The deceased said that he was going to kill her for biting his thumb the way she had. She was sick and went home, but returned to get some snuff and other articles, taking a pistol with her for protection. After getting the articles, she started to her home, but on looking back, saw the deceased coming behind her with a box of groceries on his shoulder. He overtook her and said: "You bitch, you bit my finger that way, and when I get through with you, you will not be able to bite another man's finger." She requested him not to beat her any more, but he said that he was going to kill her. He set the groceries down and started towards her. She backed off, protesting against his whipping her any more, and he said: "Well, you must have that little old gun." Then he reached down and got a rock, and when he drew back to throw it, she shot the pistol and broke and ran. She claimed that the deceased had whipped her on various previous occasions, and that she had separated from him, but he whipped her until she came back.

Each of the parties were about the same age—something over thirty years. The deceased weighed about twenty pounds more than the appellant. She said: "I don't know whether Lug (deceased) could see the pistol or not, but I saw that big white rock he had. The rock looked to me to be as big as my two fists. He drew his right hand back and told me he was going to kill me. I was in pain at that time. At the time I shot him, he didn't put his hand on me, but I kept backing out of his reach." She thought he was going to carry his threats into effect.

According to the version of the State, as developed by the testimony of the witness Hodge, the homicide took place between his house and that of the appellant and her husband, at a point about one hundred yards distant from the house of Hodge. Appellant and deceased went for the groceries when some one called the deceased to the garage. Appellant called him to come back and said that if he did not come she would come after him. The deceased said: "If you think you are big enough, come on." She said she thought she was, and the witness heard the deceased beg her to turn him loose. They

were in the habit of fighting. The witness went into the house and changed his clothes, and when he went out to where they were, appellant had the deceased's finger in her mouth. When the witness Hodge arrived, appellant turned the deceased loose and he said: "Go home and stay home if you don't let me alone." She went home and the deceased went after Hodge's cows, and while he was gone, she came back and asked where the deceased was. She was told that he had gone after the cows. After returning he fed the mules and then got the groceries and carried them on his back. The witness heard appellant and deceased mumble to each other as they walked toward their home. Soon thereafter a shot was fired and he heard the deceased exclaim: "Come and get me, Jane has shot me."

There is testimony that the appellant had stated to others that she intended to kill the deceased. The court instructed the jury on the law of provoking the difficulty. The sufficiency of the evidence to raise this issue is questioned by the appellant, and she complains of the manner in which it was submitted. We copy from the charge on the subject:

"If you believe from the evidence, beyond a reasonable doubt, that the said Bertha Cottom and Lug Cottom had, prior to the time of the shooting of the deceased by the defendant, if she did shoot him, had a personal difficulty, and if you further believe from the evidence beyond a reasonable doubt that the said Bertha Cottom left the deceased upon being ordered to do so, and that she later returned with a deadly weapon and renewed the difficulty, if there was any difficulty, and intentionally sought and brought on the alleged difficulty with the said Lug Cottom with the intent to kill him, and that in said difficulty the said Bertha Cottom shot and killed the said Lug Cottom, then and in that event the said Bertha Cottom would forfeit her right of self defense, and would be guilty of either murder or manslaughter as those terms have heretofore been defined to you in other portions of this charge."

In writing the paragraph quoted, the learned trial judge, in our opinion, omitted an essential element in the law of provoking the difficulty. To deprive the appellant of the right of self-defense under the evidence in question, it was essential that her words or conduct be reasonably calculated to have provoked the deceased to attack her, and that responding to such words or conduct, he did make the attack or demonstration which caused her to shoot him. Sanders v. State, 50 Texas Crim. Rep. 430; Smith v. State, 48 Texas Crim. Rep. 203; Gant v. State, 55 Texas Crim. Rep. 292; Grayson v. State, 57 S. W. Rep. 809; Hjeronymus v. State, 46 Texas Crim. Rep. 160.

The court having qualified appellant's right of self-defense by a charge on the law of provoking the difficulty, it should, upon appellant's demand, have instructed the jury in a more favorable manner concerning the right of the appellant, in view of the evidence of

threats, to arm herself. Branch's Crim. Law, Sec. 406; Branch's Ann. Tex. Penal Code, p. 1091; Fox v. State, 71 Texas Crim. Rep. 318; Stanley v. State, 81 Texas Crim. Rep. 36. The only reference to this matter is embraced in the charge submitting the converse of the State's theory of provoking the difficulty, telling the jury under what conditions the right of self defense would not be forfeited in these words: "And that she armed herself to protect herself against any unlawful or threatened attack by the deceased." See Nix v. State, 45 Texas Crim. Rep. 507; Ball v. State, 29 Texas Crim. App. 126; Gant v. State, 55 Texas Crim. Rep. 292; Tardy v. State, 46 Texas Crim. Rep. 220.

In our judgment, the facts are not such as to call for a charge on the law of provoking the difficulty. The theory of the State, as developed from the testimony, was that the appellant, acting either upon a previously formed design, as indicated by her threats to take her husband's life or upon malice growing out of the encounter or fight with him antecedent to the homicide, went to her home, armed herself, returned and slew him without provocation. It was appellant's theory, as developed from her testimony, that she feared that the deceased would execute his previously announced threats to kill her and that her danger was enhanced by the irritation manifested by him and the anger engendered by the fight in which they had engaged a short time before the homicide and that because of these fears she armed herself, and that while they were together on their way home, the deceased, without provocation, and against her entreaties, resumed hostile and threatening attitude and while in the act of striking her with a weapon, she fired the fatal shot in defense of her life. No one described the conduct of the appellant and the deceased at the time of the homicide. They were about one hundred yards from the home of Hodge and were surrounded by darkness. That she spoke any word or did any act reasonably calculated to cause the deceased to attack her or did cause the deceased to attack her is revealed by no testimony. From the State's standpoint, she shot him without provocation, upon previous malice. From her standpoint, she defended against an attack which he initiated and pursued without provocation from her. Under these circumstances, there is no evidence upon which to predicate a charge involving the idea that she at that time intentionally did some act or spoke some word for the purpose of causing him to attack her so that she might have a pretext for killing him. Such a qualification upon her testimony presenting the issue of self-defense, we think, was not warranted. The mere fact that she was armed was not enough to deprive her of the right of self-defense. Grayson v. State, 57 S. W. Rep. 809; Hall v. State, 42 Texas Crim. Rep. 449; Shannon v. State, 35 Texas Crim. Rep. 6; Crow v. State, 48 Texas Crim. Rep. 421; Cartwright v. State, 14 Texas Crim. App. 502; Ball v. State, 29 Texas Crim. App. 107; Branch's Crim. Law, Sec. 466.

In its applicability to the rules of law pertaining to the issue of provoking the difficulty, we discern no substantial difference between that in the instant case and in numerous others in which the sufficiency of the evidence to raise the issue has been denied. See Reese v. State, 49 Texas Crim. Rep. 242; Burnett v. State, 51 Texas Crim. Rep. 20; Smith v. State, 48 Texas Crim. Rep. 203; Morgan v. State, 34 Texas Crim. Rep. 222; Martinez v. State, 81 Texas Crim. Rep. 627.

The errors pointed out require a reversal of the judgment which is ordered.

*Reversed and remanded.*