### J. C. MUNDINE v. THE STATE.

*No. 1163.    Decided January 13th, 1897.*

#### 1.   Arrest Without Warrant—Municipal Ordinances.

Our statutes, Code Crim. Proc., Arts. 247 to 250, inclusive, enumerate the only conditions upon which a peace officer is authorized to arrest without a warrant; and, the cases in which such arrests can legally be made are felonies, breaches of the peace, or where the offender threatens or is about to commit some offense against the laws; and municipal ordinances cannot extend the right of arrest to other cases.

#### 2.   Same—Injury to Property.

The law does not authorize an arrest without warrant for mere injury to property; there must be a breach of the peace.

#### 3.   Defense of Property.

If parties are boisterous in one's place of business, the proprietor has the right to request them to desist; and, if they refuse, he can request them to leave, and if they refuse to do so he can eject them; but neither a peace officer or any other person would be authorized, under such circumstances only, to arrest and imprison the parties even though property in the place may have been injured by them.

#### 4.   Same—Resistance to Arrest—Violence by Officer—Manslaughter.

Where an officer is endeavoring to illegally arrest a party, such party has the right to resist the arrest and repel force by force; and, if the attempted illegal arrest and violence used by the officer, arouse and excite his passions so as to render his mind incapable of cool reflection, and he slays the officer, ordinarily, the killing would be manslaughter.

#### 5.   Same—Assault with Intent to Murder—Charge—Cooling Time—Aggravated Assault.

On a trial for assault with intent to murder, where it appeared that defendant and another party were engaged in a friendly but boisterous scuffle in a saloon, in which they broke a glass in a partition door; that the proprietor hunted up and brought an officer to the saloon; that the latter attempted to arrest the defendant, using much violence in doing so; that defendant demanded to know who had him arrested, and, upon being told, cursed and abused the saloon keeper and threatened that he would kill him as soon as he was released; that defendant made his escape from the officer, and, after an hour's time, returned to the saloon with a shotgun, and the shooting occurred, it being a question as to who shot first. Held: The questions of adequate cause, passion and cooling time were matters which the court should have submitted to the jury in connection with the issue of aggravated assault.

**6. Same—Right of Self-defense—Provoking Difficulty—Charge.**

Upon the facts above stated, where the court, in connection with the charge upon self-defense, instructed the jury that, if defendant went to the saloon with the previously formed design to kill, and, by his acts then and there done, provoked the occasion that caused the difficulty, he could not avail himself of the right of self-defense. Held: Too general, and erroneous in not defining and stating what character of acts, on the part of defendant, would deprive him of the right of self-defense. It should have gone further, and informed the jury, that the act of defendant, in order to destroy and nullify the right of self-defense, must have been a hostile act directed toward the antagonist or injured party, and intended, by defendant, to provoke and bring on, the difficulty.

**7. Same—Defendant's Standpoint and Defendant's Testimony—Charge.**

The case must be looked to from the standpoint of the defendant; and, if his testimony presents any defensive theory, however unreasonable it may appear, it is the duty of the court to give it in charge to the jury.

**8. Same—Self-defense.**

The right of self-defense is not impaired by mere preparation for the perpetration of a wrongful act, unheralded and unaccompanied by any demonstration or otherwise, indicative of a wrongful act. A party may have a perfect right of self-defense though he may not be wholly free from blame in the transaction.

APPEAL from the District Court of Lee.    Tried below before Hon. ED. R. SINKS.

Appeal from a conviction for assault with intent to murder; penalty, two years' imprisonment in the penitentiary.

The opinion fully states the material facts in the case.

The following are the special instructions requested by the appellant: (1) "The party, Singleton, was without authority to arrest the defendant, Mundine, and if you believe from the evidence that Vanderworth, the alleged injured party, procured the said Singleton to so arrest the defendant, and was present and encouraged said arrest, and that the said Singleton, in so arresting the defendant in a rude and rough manner,. and in the presence and hearing of others roughly used him, tore his clothes from his person and against his will, detained him in his custody, and refusing to permit to him his liberty, threatened to strike him with a heavy iron instrument, and that thereby the mind of said defendant became agitated and excited to such a degree that it was rendered incapable of cool reflection, and that while in such excited condition he assaulted the said Vanderworth by shooting at him with a gun, and that such assault was not justified by the law of self-defense, and if you further believe that, at the time the original design to make the assault was conceived, the mind of the defendant was excited, in the manner and by the causes above stated, then you are instructed that the defendant. would be guilty of an aggravated assault."

2. "Although you should believe that the defendant went to the saloon of Fritz Vanderworth for the purpose of raising a difficulty, but not a serious conflict of any kind, but for the purpose of cursing or abusing said Vanderworth, and that his acts, while they may have occasioned the difficulty, were not acted or done with the purpose or design of provoking any serious conflict with said Vanderworth, and although you should believe that the said Vanderworth might have be-

lieved, in good faith, that it was the design of Mundine to assault him with a gun, and so believing fired upon him, and that thereupon the said Mundine fired upon Vanderworth with the intention to kill him, in that event you are charged that, should you so believe, you will find the defendant guilty of an aggravated assault."

3. "If you believe from the evidence that the defendant, J. C. Mundine, was arrested unlawfully by one Singleton; that the said J. C. Mundine had committed no offense; that said arrest was instigated by Fritz Vanderworth, who procured the same, and was present, assisting and abetting the said Singleton therein; that the said Singleton had no warrant for said arrest; that said Mundine was committing no offense, and had committed none; that said Singleton roughly seized the said Mundine, dragged him from the back room of the saloon into the front room, tore his clothes from his person, drew an iron stick on him, and unlawfully detained him in custody against his will, and that said Vanderworth was present, participating in such illegal detention, and that thereby the mind of the defendant became violently excited and agitated, and to such an extent that it was incapable of cool reflection; and that while it was in such violently agitated condition the defendant conceived a design to assault the said Vanderworth, and before his mind had had sufficient time to become cool and capable of cool reflection, and while, in fact, he was in such stage of mental excitement, produced by the causes aforesaid, he did commit an assault upon the said Vanderworth with a deadly weapon; and if you should believe, beyond a reasonable doubt, that he did not act in self-defense, then in that event you will find the defendant guilty of an aggravated assault and battery, and assess his punishment at a fine of not less than twenty-five dollars nor more than one thousand dollars, or by confinement in the county jail for not less than one month nor more than two years, or by both such fine and imprisonment."

4. "Although you should believe from the evidence that the defendant, J. C. Mundine, did seriously threaten to take the life of Fritz Vanderworth, yet if you should further believe that Fritz Vanderworth fired upon the defendant first, and that at the time defendant was doing no act or making no attempt or demonstration to carry out such threat, then you are instructed that said Vanderworth had no right to assault or fire upon defendant, and he, the said Mundine, had the right to fire on Vanderworth in his own self-defense, and if you so believe, you will acquit." "That even though Vanderworth had not fired upon the defendant, yet if it reasonably appeared to the defendant, viewed from his standpoint, that he was about to fire or was doing any act indicating an immediate purpose to fire, that then, in that event, the said Mundine had a right to fire upon Vanderworth, even though the latter had not actually fired upon him, the said Mundine." "The defendant violated no law in carrying a shotgun into the saloon of Fritz Vanderworth, and unless you find, beyond a reasonable doubt, that he went to Vanderworth's saloon with the specific intent to raise a deadly conflict, the

said Vanderworth, the said prosecuting witness, had no right to open fire on the defendant, and if he did so, the defendant had the perfect right of self-defense. In passing upon the acts of the defendant, the jury must place themselves in the position of the defendant, and view the facts, so far as possible, as they appeared to him at the time of the alleged assault, and thus viewing the evidence, give every reasonable doubt to the defendant upon every material fact."

5. "The defendant violated no law in carrying a shotgun into the saloon of Fritz Vanderworth, and unless you find beyond a reasonable doubt that he went to Vanderworth's saloon with the specific intent to raise a deadly conflict, said Vanderworth had no right to open fire on defendant, and if he did so, defendant had the perfect right of self-defense. In passing upon the acts of the defendant the jury must put themselves in the position of the defendant and view the facts as nearly as possible as they appeared to him at the time of the alleged assault, and thus viewing the evidence, give every reasonable doubt to the defendant."

6. "If you believe from the evidence that the defendant went into the saloon of the prosecuting witness, Vanderworth, and called for a drink, and while waiting to be served he was fired upon by Vanderworth with a pistol, he had the immediate right of self-defense, and if, under such circumstances, he fired upon Vanderworth he would not be guilty of any offense, and you will acquit him, and in this connection you are charged that no former words of insult offered by defendant to Vanderworth, if he offered any, would justify Vanderworth in making the assault upon him."

7. "If you believe from the evidence that the defendant received the shotgun, with which the assault is alleged to have been committed, from his father, with the intent to go into the country to carry a message, and that before he left the town of Lexington he went to Vanderworth's saloon, with intent to get a drink, and that while he was in the saloon, and making no attempt to assault the prosecuting witness, said Vanderworth fired upon him, then and in that event you will acquit the defendant."

8. "Under the facts shown in this case, the arrest of the defendant by the said Singleton, town marshal of Lexington, was unauthorized, and the defendant had the right, not only to protest against such arrest, but also to resist the same by any means in his power necessary to effect his release."

All of said above special requested instructions of defendant were refused by the court, and exceptions were duly reserved to the refusal.

The charge of the court as given, was excepted to, as to the portions relating to manslaughter and in failing to submit the issue of aggravated assault.

*Rector & Harris, J. L. Storey, Garwood, Orgain & Tate,* for appellant.—The court failed and refused to give in charge to the jury the

law of manslaughter and to submit to the jury the law of aggravated assault, there being facts in evidence tending to show that the offense, if any, committed by the defendant, was of no higher grade than aggravated assault, and the defendant, having at the time of its delivery to the jury excepted to the charge of the court on account of said omission, and asked the court to give in charge to the jury charges Nos. 1, 2, 4 and 5, submitting said issue of aggravated assault to the jury.

The court erred in failing and refusing to charge the jury upon the issue of aggravated assault, that although they should believe that the defendant, Mundine, went to the saloon of Vanderworth with the intent to kill him, yet if in fact after entering the saloon he was preparing to take a drink of whiskey, and at the time did not see the said Vanderworth and was not in the act of assaulting the said Vanderworth, or doing any act indicating such intent, and that thereupon the said Vanderworth fired upon said Mundine, that then the defendant, if he returned the fire under such circumstances, would not be guilty of an assault with intent to murder and would be guilty of no higher grade of offense than an aggravated assault.

The issue of aggravated assault should have been submitted in connection with the law of imperfect self-defense. Jones v. State, 33 Tex. Crim. Rep., 492; Sowel v. State, 32 Tex. Crim. Rep., 482; Spivey v. State, 30 Tex. Crim. App., 343; Baltrip v. State, 30 Tex. Crim. App., 545; Bracken v. State, 29 Tex. Crim. App., 362; Bonner v. State, 29 Tex. Crim. App., 232; Hawthorne v. State, 28 Tex. Crim. App., 212; Lienpo v. State, 28 Tex. Crim. App., 179; Cochran v. State, 28 Tex. Crim. App., 422; Orman v. State, 24 Tex. Crim. App., 495; Howard v. State, 23 Tex. Crim. App., 265; Orman v. State, 22 Tex. Crim. App., 604; Johnson v. State, 22 Tex. Crim. App., 207; Paulin v. State, 21 Tex. Crim. App., 436; Miles v. State, 18 Tex. Crim. App., 157; Hobbs v. State, 16 Tex. Crim. App., 517; Williams v. State, 15 Tex. Crim. App., 617; Rutherford v. State, 15 Tex. Crim. App., 236; Neyland v. State, 13 Tex. Crim. App., 533; West v. State, 2 Tex. Crim. App., 460.

That an illegal arrest will reduce a homicide from murder to manslaughter. Miller v. State, 31 Tex. Crim. Rep., 609; Meuly v. State, 26 Tex. Crim. App., 274; ex parte Sherwood, 29 Tex. Crim. App., 334; Horrigan & Thompson; Notes to Commonwealth v. Drew.

On imperfect self-defense: Meuly v. State, 26 Tex. Crim. App., 274; Cartwright v. State, 14 Tex. Crim. App., 486; Cunningham v. State, 17 Tex. Crim. App., 89; White v. State, 23 Tex. Crim. App., 154; Carter v. State, 28 Tex. Crim. App., 355; Polk v. State, 30 Tex. Crim App., 657.

An illegal arrest has always been held adequate cause to reduce a homicide to manslaughter. In this case it is combined with circumstances of great aggravation. A legal arrest, if made in a brutal manner or with unnecessary force, can be repelled by as much force as is reasonably necessary, and would at least reduce the

degree of the crime, if more than sufficient force was used to repel the aggression. Here an illegal arrest, jointly made by Singleton and Vanderworth, is attended by the grossest outrage of person and feelings; defendant is dragged about, his clothes torn from his person, choked, insulted, threatened with an iron weapon by a giant in size and strength. Such treatment would arouse the passions of a saint in paradise. And all the witnesses concur that defendant was violently agitated. The learned trial judge, however, assumed as a matter of law, that sufficient "cooling time" had elapsed for this passion to subside. As said by this court in the Jones case, 33 Tex. Crim. Rep., 492, "the statute fixes no time in which an excited mind is required to become cool and sedate." In the Sowell case, 32 Tex Crim. Rep., 482, the time intervening between the first difficulty and the assault charged, was variously estimated at from thirty minutes to an hour, and it was held that manslaughter and aggravated assault were issues to be submitted. In the case at bar the time as fixed varies from "half an hour or less to three-quarters of an hour or more," the average being about half an hour. As stated in Maher's case, so often quoted with approval by this court, it is not a question of either minutes or hours, but a fact to be decided, was the agitation present or had it subsided. These are facts for the jury exclusively.

The court erred in its charge to the jury in failing and refusing to charge the jury, that if they believed that the defendant, Mundine, went to the place of business of Fritz Vanderworth with the design to provoke a serious difficulty with Singleton or any person other than Vanderworth, and not with the design to provoke such a conflict with Vanderworth, and that said Vanderworth fired upon him, that defendant's right of self-defense against Vanderworth was perfect, and if the jury should believe that the defendant when fired upon by Vanderworth was not making any attempt to assault the latter, they will acquit the defendant, although they might believe that his purpose in returning to the saloon was to kill or seriously injure Singleton, or any party other than said Vanderworth.

The original trouble was largely with Singleton. Defendant was deeply incensed at him for the illegal arrest. The parting words of defendant, according to Singleton, Bill Harris and W. M. Taylor, were in the nature of a threat against Singleton. The pistol which defendant took away from the saloon was, according to these witnesses, for Singleton's benefit. Singleton was at the saloon when defendant left— Vanderworth was not. At the time of the original arrest, defendant had spoken quite as roughly to Singleton as to Vanderworth. It was with Singleton with whom the father, F. M. Mundine, feared the trouble, and to avoid whom, he was inducing his son to leave town. It was Singleton "who had the devil in him." Then it is quite as probable, and the evidence directly raises the issue, that in returning to the saloon the defendant was seeking a difficulty with Singleton and not Vanderworth. This unlawful design would not abridge his right of self-

defense as against Vanderworth, and the jury should have been so informed.

The court erred in its charge to the jury in paragraph five thereof, wherein it instructed the jury that "if they believed that the defendant went to the place of business of the said Fritz Vanderworth with a formed design to kill him, and by his acts, if any, then and there produced the occasion that caused the difficulty, if any, then the defendant cannot avail himself of the right of self-defense, although Vanderworth fired the first shot," to which the defendant at the time of its delivery excepted upon the ground that in order to deprive the defendant of his right of self-defense, the acts of the defendant producing the difficulty must have been unlawful acts, or acts intended by defendant for the very purpose of bringing on a difficulty, and the defendant did then and there request the court to so modify its charge as to instruct the jury that the said acts which "produced the occasion which caused the difficulty" must be unlawful acts or acts intended by the defendant to bring on a conflict, which exceptions were overruled by the court and said charge refused, to which the defendant excepted, as appears by bill of exceptions.

The court erred in paragraph No. 5 of its charge to the jury, wherein in charging upon the law of self-defense, it failed and refused to charge the jury, that the facts and circumstances surrounding the difficulty should be viewed from the standpoint of the defendant, to which error in the charge of the court, the defendant did then and there, at the very time except, and in order to remedy said defect, and call the attention of the court thereto, ask the court to charge the jury as set forth in special charge No. 6, requested by the defendant, which exceptions were overruled and said charge refused, as per bill of exceptions. Bonner v. State, 29 Tex. Crim. App., 223; Cochran v. State, 28 Tex. Crim. App., 422; Gonzales v. State, 28 Tex. Crim. App., 130; Spearman v. State, 23 Tex. Crim. App., 224; Patillo v. State, 22 Tex. Crim. App., 586; Bell v. State, 20 Tex. Crim. App., 445.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of an assault with intent to murder, and given two years in the penitentiary; hence this appeal. There are but two questions in the case that we deem necessary to be considered, and these involve the failure of the court to charge on aggravated assault, and the charge of the court on the law of self-defense. Appellant tendered to the court, at the trial, a charge on aggravated assault, which the court refused to give, and he excepted. The requested charge was predicated on the theory insisted on by the appellant, that the evidence showed, as the origin of the difficulty, an illegal arrest of appellant, made by one Singleton, the marshal of the town of Lexington, which was done at the instance of the prosecutor, Vanderworth. One of the charges asked by appellant on this subject is as follows, to-wit: "The party, Singleton, was without authority to

arrest the defendant, Mundine; and if you believe from the evidence that Vanderworth, the alleged injured party, procured the said Single-ton to so arrest the defendant, and was present and encouraged said ar-rest; and that the said Singleton, in so arresting the defendant in a rude and rough manner, and in the presence and hearing of others, roughly used him, tore his clothes from his person, and, against his will, de-tained him in his custody, and, refusing to permit him to have his lib-erty, threatened to strike him with a heavy iron instrument; and that thereby the mind of said defendant became agitated and excited to such a degree that it was rendered incapable of cool reflection; and that, while in such excited condition, he assaulted the said Vanderworth by shooting at him with a gun; and that such assault was not justified by the law of self-defense; and if you further believe that, at the time the original design to make the assault was conceived, the mind of the defendant was ex-cited, in the manner and by the causes above stated—then you are in-structed that the defendant would be guilty of an aggravated assault." Another charge is similar to this, except that it also involved a charge on cooling time. The evidence in this connection showed that on the evening of the 17th of June, 1895, appellant rode into the little town of Lexington, in Lee County, to the saloon kept by Fritz Vanderworth, and, according to the testimony of some of the State's witnesses, started to ride his horse on the gallery of said saloon, and then got down, and tried to lead him on it. Vanderworth told him not to do that, and de-fendant then hitched his horse to a post, and came into the saloon. (As to this episode, defendant denies that he tried to ride or lead his horse on the gallery, but that his horse was hardly bridle-wise, and was about to get on the gallery, when he got down, and led him away, and hitched him.) After he hitched his horse, he went into the saloon, slapped or struck one McCree over his head with his hat. They engaged in a scuf-fle. This ceased, and then defendant and one Charley Woodward en-gaged in a scuffle in the saloon. They scuffled for some time, knocked some chairs over, and broke a glass in the partition door between the front and back rooms of the saloon. There is no evidence showing that Vanderworth asked or attempted to procure the parties to desist from their scuffle, but went out of the saloon, and hunted up the town mar-shal, Singleton, and told him, according to his testimony, to go over and arrest them, as they were scuffling in his saloon, and breaking up his things. Singleton, the town marshal, says that Vanderworth came to him in front of Griffith's gallery (which is on the same block as Van-derworth's saloon), and said he wanted him to go over to his saloon, and arrest those boys; that they were not fighting, but were scuffling and breaking up his things; that he went over, and found Chap Mundine (appellant) and Charley Woodward tussling; that he caught hold of Chap Mundine and told him to consider himself under arrest. Charley Woodward testified: That, after the defendant and McCree got into a scuffle, he and defendant got into a scuffle also. "It was all in play; neither of us was mad at all." That they were playing. "We strug-

gled around considerably, and I broke one of the glass out of the window on the south of the folding door leading from the saloon to the back room. I finally got Mundine down, and was on top of him under the table, when Singleton came in, and arrested the defendant. Chap Mundine asked Singleton what he was arresting him for; that he had done nothing." The defendant himself testified on this point to the same effect as the witness, Woodward. The State's witnesses, as well as the defendant's, show that the defendant wanted to know what he was arrested for, that he was doing nothing, and protested against his arrest. Singleton insisted on arresting him, and taking him to the mayor's office, and caught him by the collar. Defendant clung to Woodward, and insisted on not going. A struggle ensued between Singleton (who was a very large man, armed with a stick) and defendant, in which he dragged and pulled the defendant along from the back room of the saloon into the front room. During the struggle, Singleton tore the vest of the defendant, and also tore his shirt into shreds. Singleton called on Woodward to help arrest the defendant, but Woodward declined, stating that he was guilty of the same thing as Mundine, and that they were doing nothing. He called to another party to assist him, and finally defendant agreed, if they would send and get him a shirt, that he would go with them anywhere, but that he would not go out on the streets naked. During the struggle, defendant was very violent in his language towards Singleton, and insisted on knowing who had him arrested. Singleton finally told him that it was Vanderworth. Defendant then directed his animosity towards Vanderworth, and cursed and abused him, and according to the State's witnesses, told him that, as soon as he got out of this he intended to kill him for having him arrested. In a short while, the defendant's shirt came, and he went back a little space in the room, to put it on; and as soon as he had done this, instead of submitting to further arrest, he walked out the back door, and started off towards his home, and according to the State's witnesses, defied Singleton to rearrest him. In a short while (the witnesses put it from a half hour to an hour after the defendant left) he came back to the saloon, armed with a shotgun. According to the State's witnesses, as soon as he came into the saloon, he raised his gun, and fired it at Vanderworth, who was in the back room of the saloon at the time, armed with a pistol; he having seen the defendant on his way back to the saloon with the shotgun, and had armed himself. Defendant fired at him through the glass door, breaking the glass. Vanderworth returned the fire from the back room. Some of the State's witnesses say that the defendant fired again. Vanderworth continued firing, and defendant retreated out of the saloon. Vanderworth followed him, and fired two shots at him after he got outside. During the shooting defendant was wounded twice in the arm, one of the shots breaking his arm. Defendant then threw his gun down, and went into Hardcastle's drug store. The defendant's testimony shows that, when he came back with the gun, he was on his way then

to a pasture, whither he had been sent by his father, who met him at home, and told him to go to a certain place to repair a fence; that he carried his gun along to shoot any rabbits or squirrels he might find on the way. Defendant's proof further shows that but one barrel of the gun was loaded, and that was with squirrel shot (the character of the shot with which the gun was loaded is corroborated by all the witnesses); that, on his way to the pasture, he diverged from his course, to get a drink of whiskey at the saloon, and his only purpose, as stated by himself, in going into said saloon, was to get a drink of whiskey. He testified that, as he approached the saloon and reached the gallery, he asked the bartender, Bill Harmon, if he could get a drink; that Harmon told him "Yes;" that he walked into the saloon, and had set his gun down on the butt, and was feeling in his vest pocket for the dime that he had borrowed with which to get a drink when he was fired upon; that this shot broke his arm; that whoever it was continued firing upon him; and that, as soon as he could, he returned the fire, to make a diversion, so he could get out, and, after he ran out of the saloon, some person continued to fire upon him; that he did not know who it was. And the testimony of the defendant shows that, when he threw his gun down, he said that somebody was shooting at him, and he was going to have him arrested. This is a summary of the main points in the testimony. In our opinion, the evidence tends strongly to show that, in the origin of the difficulty, defendant was subjected to an illegal arrest. We assume from the fact that the evidence shows that Singleton was town marshal of Lexington, and the testimony shows that Lexington had a mayor; that said town was incorporated, though there is no positive proof of this. There is no proof whatever that the town marshal had a writ for the arrest of the defendant. On the contrary, the evidence indicates that he was attempting his arrest on a verbal order or suggestion on the part of Vanderworth. Our statutes on the subject of arrest without warrant (Code Crim. Proc.) provide as follows:

"Art. 247. A peace officer, or any other person, may, without warrant, arrest an offender, when the offense is committed in his presence or within his view, if the offense is one classed as a felony, or as an 'offense against the public peace.'"

"Art. 248. A peace officer may arrest without warrant when a felony or breach of the peace has been committed in the presence or within the view of a magistrate, and such magistrate shall verbally order the arrest of the offender."

"Art. 249. The municipal authorities of towns and cities may establish rules authorizing the arrest without warrant of persons found in suspicious places, and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or threaten or are about to commit some offense against the laws." Article 250 provides for the arrest without warrant by proper officer, "upon the representation of a credible person that a felony has been committed,

and that the offender is about to escape, so that there is no time to procure a warrant."

We have none of the ordinances of the town of Lexington before us, so that we do not know what the authorities may have adopted under Article 249. But at any rate, in respect to this case, they could not have done more than have ordered the arrest of a person guilty of some felony or breach of the peace, or some person who threatens or is about to commit some offense against the laws. The question here presented is: Does the proof show that the defendant had committed or was committing a breach of the peace in the presence of the officer, Singleton? It will be noted that none of the witnesses, either for the State or the defendant, say that Woodward and the defendant were at the time engaged in a difficulty. The testimony is merely to the effect that they were engaged in a friendly scuffle. It is true that in this scuffle they had done some damage to the property of Vanderworth. It is not shown, however, that he made any protest or request or did anything in order to prevent the scuffle in his saloon. The law does not authorize an arrest without warrant for mere injury to property; but it must be a breach of the peace. It may be that the boisterous conduct of the parties, Mundine and Woodward, may have ultimately led to a breach of the peace; but so far as the evidence here advises us, when Vanderworth left, they were engaged in a friendly scuffle, and, when Singleton appeared on the scene, they were still engaged in that same character of a struggle. If their conduct was boisterous, unquestionably the proprietor had a right to request them to desist. If they refused to desist, he could require them to leave his house; and, if they then refused to do so, he could eject them. But, under the evidence in this case, we do not believe our law would authorize a peace officer, or any other person, to arrest and imprison the defendant. Moreover, the evidence in this case shows that very violent means were used by the officer in effecting this arrest. This may have been necessary in order to accomplish it, and, if the officer had been authorized to make the arrest, his acts, under the circumstances, may have been justifiable; but, not being authorized, he was not justified in using the violent means he did, and the defendant had a right to resist this effort to arrest him, and to repel force by force. See, Miers v. State, 34 Tex. Crim. Rep., 161. Unquestionably, the treatment he received was calculated to arouse and excite his passions. In this case, both the illegal arrest and the violence used combined to excite such passion. If, at the time the arrest was made, he had slain his adversary, Singleton, ordinarily the homicide would not have been of a greater degree than manslaughter. Now, a majority of the witnesses state that about a half hour elapsed between this struggle and the subsequent assault of the defendant. One witness, we believe, places the time as much as an hour. But, whether it was a half hour or an hour, the question of adequate cause, and the question of passion, and the question of cooling time, were matters for the consideration of the jury, and could not be withheld from them by the court. We believe the

court should have given, if not the charges asked by the appellant, a proper charge on aggravated assault, involving the question of cooling time. Appellant also complains of the charge of the court on self-defense, and the failure of the court to give the charges asked by him on this subject. The charge of the court on the subject of self-defense was as follows: "If you believe from the evidence that the defendant shot at said Fritz Vanderworth with a gun, and you further believe, that, at the time he did so (if he did), said Fritz Vanderworth had shot at the defendant, then you are charged that the defendant had the legal right to shoot said Fritz Vanderworth; and he would not be required to retreat in order to avoid the necessity of killing his assailant; and in such case you will acquit the defendant. In this connection you are charged that if you believe from the evidence, beyond a reasonable doubt, that the defendant went to the place of business of said Fritz Vanderworth, with a previously formed design to kill him, and by his acts, if any, then and there done, produced the occasion that caused the difficulty, if any, then the defendant cannot avail himself of the right of self-defense, though Vanderworth fired first; but if he so went with said design, but abandoned the same, then his right of self-defense would be complete, as above charged; or, if he so went with no design to kill said Vanderworth, then his right of self-defense would be complete, as above charged." If the court had simply stopped with his charge on self-defense, authorizing the defendant to rely on self-defense if Vanderworth fired at him first, or made the first hostile demonstration against him, appellant would have no cause of complaint. When, however, in connection with this charge, the court told the jury that if the defendant went to the saloon of the said Vanderworth, with the previously formed design to kill, and by his acts, if any, then and there done, provoked the occasion that caused the difficulty, that then the defendant could not avail himself of the right of self-defense—without defining or stating what character of acts on the part of the defendant would deprive him of the right of self-defense—he in effect took away from the defendant all of the benefit that he might otherwise have derived from the charge which was given on self-defense. What character of act would deprive the appellant of the benefit of self-defense is not stated. Certainly, it must be some hostile act directed toward Vanderworth for the purpose of bringing on a difficulty. Unquestionably, defendant went to the saloon of Vanderworth, armed with a gun, and this, according to the testimony of some of the witnesses, directly after he had threatened his life. Under the circumstances, this might be considered by the jury as the act, under the charge of the court, which would cut off the right of self-defense. Still, defendant says, in his testimony, that, notwithstanding these apparent circumstances of hostility on his part, he went to the saloon for a perfectly legitimate purpose—that is, to get a drink—and with no intent on his part to renew the difficulty. However much the court may have doubted his purpose or questioned his testimony, it was not within his province to

withhold a phase of the case presented by his evidence from the jury. We are not discussing this case from the standpoint of Vanderworth. If he was on trial for killing the defendant for coming into his saloon under the circumstances, armed with a gun, a different question would be presented.   But we must look at this case from the standpoint of the defendant; and if his testimony presents any defensive theory, however unreasonable it may appear, it is the duty of the court to give it in charge to the jury.   In Williams v. State, 30 Tex. Crim. App., 429, and Maxwell v. State, 31 Tex. Crim. Rep., 119, it was said that the right of self-defense is not impaired by mere preparation for the perpetration of a wrongful act, unheralded and unaccompanied by any demonstrations, or otherwise indicative of a wrongful purpose.   And in Shannon v. State, 34 Tex. Crim. Rep., 5, it was held: "The fact that a person arms himself before going to deceased to ask an explanation of his conduct does not deprive him of the right of self-defense."   And in Milrainy v. State, 33 Tex. Crim. Rep., 577, it is held that "the fact that a person may know that his presence on the premises may be offensive to another does not deprive him of self-defense if his going to the premises is in good faith."   In Bonnard v. State, 25 Tex. Crim. App., 173, it is held:  "Where the defendant sought an interview with the deceased, for the purpose of demanding payment of a debt, and with no hostile intentions towards the deceased, and the deceased became angry, and an altercation ensued, in which the deceased drew a pistol, and assaulted the defendant with it in such a manner as to create in the mind of the defendant a reasonable apprehension of death or serious bodily injury, and, acting upon such reasonable apprehension, defendant fired the fatal shot, he was justifiable, on the ground of necessary self-defense."   In Franklin v. State, 30 Tex. Crim. App., 628, speaking upon a question similar to the one involved in this case, the court uses the following language:  "A party may have a perfect right of self-defense, though he may not be wholly free from blame in the transaction; the question being, what is the nature of the blame?   If the blame or wrong was not intended to produce the occasion, nor an act which was under the circumstances reasonably calculated to produce the occasion or provoke the difficulty, then the right of self-defense would be complete, though the act may not be blameless."   In said case the wrongful act was not specified, nor its character defined; and the court held that the charge was too general, and this should have been done.   Now, if the charge of the court complained of had gone further, and informed the jury that the act, in order to destroy or nullify the right of self-defense, must be a hostile act, directed towards Vanderworth, and intended by the defendant to provoke and bring on a difficulty, it would have been a proper charge, and not subject to the criticism of the appellant.   And such a charge, coupled with the charge given by the court on self-defense, would have rendered entirely unnecessary the many phases presented by the appellant on self-defense in the charges asked by him, and which were refused by the court.   For the failure of the court to give

37th Tex. Crim. Rep.—2.

to the jury in this case a charge on aggravated assault, and because of the error of the court in its charge on self-defense, the judgment of the lower court is reversed and the cause remanded.

*Reversed and Remanded.*