### DOCK WATSON v. THE STATE.

No. 3326. Decided June 6, 1906.

#### 1.—Murder in Second Degree—Evidence—Impeachment—Opinion of Witness.

Upon trial for murder, where the defendant introduced a witness and proved that deceased was advancing upon defendant, making a demonstration with his right hand, when defendant fired the fatal shot, it was error to permit the State on cross-examination to ask witness whether he did not state in the presence of others that defendant had shot deceased for nothing, which witness answered in the negative; whereupon the State was permitted to introduce testimony that the defendant's witness did make such a statement. Such statement was .but the expression of the opinion by the witness and was not the subject of impeachment.

#### 2.—Same—Charge of Court—Manslaughter—Adequate Cause.

Where upon trial for murder, the evidence showed matters occurring immediately before the difficulty, and there was a cessation of the difficulty, and shortly afterwards there was a renewal of the same which ended in the death of deceased, a charge of the court which submitted the law of manslaughter in a general way, but restricted the jury in determining the provocation for the adequate cause to things transpiring immediately at the difficulty was misleading.

#### 3.—Same—Threats—Negative Charge—Self-Defense.

Where an issue is in a case favorable to the accused, the law should be given in an affirmative manner presenting that issue; and it was error on a trial for murder, where the evidence showed threats, the dangerous character of the deceased and self-defense, to limit those issues unfavorable to defendant, or give them in the negative form which practically obliterated the statutory provisions along those lines.

#### 4.—Same—Appearances of Danger—Retreat—Actual Danger.

Where upon trial for murder the evidence showed appearances of danger, raising the right of self-defense, it was error to limit defendant's right of self-defense to the fact that deceased was advancing on him with an open knife, etc., thus limiting his right to actual danger. Neither was the charge that defendant must resort to all other means except retreat, authorized by the evidence.

Appeal from the District Court of Nacogdoches. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of murder in the second degree; penalty, eight years imprisonment in the penitentiary.

The opinion states the case.

*King & King,* for appellant.—On question of adequate cause: Williams v. State, 15 Texas Crim. App., 617. On question of self-defense: Brady v. State, 65 S. W. Rep., 521.

*J. E. Yantis,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, eight years in the penitentiary being fixed as the punishment.

After the State had rested its case, appellant introduced T. B. Lewis, and proved by him that deceased was advancing upon appellant at the time of the difficulty, and appellant was retreating and demanding of deceased to stop, at which time deceased made a demonstration with his right hand by raising it from his right side upward, and appellant fired the shot which brought about the death of deceased. The State had not proved by any of its witnesses that they saw deceased make a demonstration, and in fact they so place themselves that they were hardly in a position to see just what deceased was doing with his hands at the time of the shooting. Therefore this made Lewis a very material witness for defendant. On cross-examination the State was permitted to ask this witness if he saw, or if this transaction happened as he detailed it, why he had stated at Perkins, Kleas and Mast's drug-store, in the presence of M. R. Kleas, and why did he subsequently state at his own residence to Murphy, that defendant "shot deceased for nothing." The witness was further asked, if it happened that way, did he state at the places and to the witnesses mentioned that defendant shot deceased for nothing. Witness replied that he had no recollection of making any such statements. The court then permitted the State to introduce Kleas and Murphy, and prove by them that said Lewis had made such statement in their presence. To all of this appellant reserved a bill of exceptions. A witness may be impeached by proving that he had made contradictory and conflicting statements to those which he testified on the trial, and he can be impeached if the matter was material or relevant to any issue on the trial. We are of opinion that the evidence here introduced by way of impeachment was erroneously admitted. It was but the expression of the opinion by the witness. He may or may not have thought that the action of deceased in the movement of his hand amounted to nothing. He was but a bystander, and away from the difficulty, and knew nothing of the facts except what occurred in his presence. It was at night, and seen by him by an electric light. In any event, it was but his opinion, and these facts were of such a nature that the opinion of the witness was not permissible. Mr. Whar-

ton in his Criminal Evidence, says: "A witness called by the opposing party can be discredited by proving that on a former occasion he made a statement inconsistent with his statement on the trial, provided such statement be material to the issue, though a witness, after testifying to criminating facts cannot be asked whether or not he has previously said that, in his opinion a defendant was not guilty. The statement which it is intended to contradict must involve facts and evidence. If confined to opinion, when opinion is not at issue, or to other irrelevant matters, the cross-examining party is bound by the answer." This rule was approved in Taylor v. State, 38 Texas Crim. Rep., 564. See Collins v. State, 66 S. W. Rep., 840; Price v. State, 43 S. W. Rep., 96. But this rule would hardly need authorities cited in support of it.

The charge of the court on manslaughter is seriously criticised because of the restricted manner in which the law was presented. The court in a general way submitted manslaughter and authorized the jury to take into consideration all the circumstances of the case in arriving at the provocation at the time of the difficulty, but restricted them in determining the provocation. for the adequate cause to things transpiring immediately at the difficulty. This announces .a correct proposition of law in the abstract, and usually might be sufficient. But where there are matters occurring immediately before the difficulty, and there is a cessation of the difficulty and shortly afterwards there is a renewal which ends fatally, this rule may be misleading and hurtful. This would be especially the case where there was a provocation arising just preceding the fatal difficulty in which the issue of cooling time might become an element. Here the witness Kleas, a State's witness, states that about five minutes prior to the shooting, deceased and defendant had some words, which were apparently friendly, and that during the conversation deceased blew smoke from a cigar he was smoking two or three times in the face of appellant, and immediately waved an open knife around and about his person, all of which was resented by appellant. Either or both of these might constitute an assault. The magnitude of this insulting conduct, and this assault is enhanced in view of ths fact that deceased had bitter enmity and had made threats towards appellant. These dated back several years and had origin in the fact that appellant as an officer had disarmed deceased on one occasion when he was exhibiting or had on his person a pistol. Kleas did not see deceased strike appellant, but he saw him blow the smoke in appellant's face two or three times from his cigar, and saw him get out his knife and wave it about appellant's person. This was resented by appellant, who at the time asked deceased what he meant by his conduct. He received no reply, but there was a smile on the face of deceased when the blowing of the smoke was repeated. Appellant went across the street, immediately after this transaction into a restaurant, and it seems got his pistol. As he came out from the restaurant into the street, deceased started

across the street to meet him. It was at night and the conversation ocurred in which appellant told deceased to stop and not come upon him, and began retreating. The witnesses differ as to the circumstances occurring at the immediate time. Most of the testimony is to the effect that appellant retreated and that deceased advanced towards him. The shooting occurred. Deceased lived a day or so, and made no statement as to the transaction. Immediately after being shot he ran away from the scene of the trouble. Appellant's contention was that he had a knife open and advanced upon him. It is agreed that he had a knife within five minutes prior to the last transaction and waved it about the person of appellant, and that he had the knife in his pocket when found after he had retreated from the scene of the difficulty. Under these circumstances the charge on manslaughter was too restrictive. Castro v. State, 40 S. W. Rep., 985. In that case the court said: "On an examination of the charge, we are of opinion that, as framed, the jury, in passing upon the issue of manslaughter, might have considered the same only with reference to the last assault, as the court in its charge confined the adequate cause, based on provocation, to a provocation at the time; and especially does this appear to be so when the court utterly failed to instruct the jury with reference to cooling time. Under the charges given, the jury might have well considered that they had nothing to do with the first transaction and the first blow struck by the deceased; and they might also have believed the State's witnesses, who stated they saw no blow struck by deceased at the time of the shooting, and disbelieved the defendant's witnesses, who alone state that they saw deceased strike defendant just before he shot him. And so, with this view, they might have, in their deliberation deprived appellant of manslaughter altogether. In the view we take of the evidence in this case, the court should have distinctly given the jury a charge upon manslaughter, predicated upon the first assault by the deceased upon defendant and in that connection have given the jury a charge on cooling time. Mundine v. State, 37 Texas Crim. Rep., 5; 38 S. W. Rep., 619. And the court should also have given another charge, predicated upon the last assault. If deceased struck defendant with his hand or fist, and the defendant did not reasonably believe that his life was in danger, or that he was in danger of serious personal injury from said assault, but the blow caused him pain or bloodshed, and his anger was aroused and he was rendered incapable of cool reflection, and killed defendant on said account, this would make defendant only guilty of manslaughter." This excerpt we think is directly pertinent to this case. As before stated, the court charged the jury in general terms that the provocation must be confined to the time of the killing, and left them to consider no other provocation as adequate cause. The fact that he may have informed the jury that they could look to other circumstances of the case or all the circumstances of the case having relation to the provocation arising at the time, and

its only bearing could be upon that provocation did not fully present manslaughter. Here was a provocation happening within five minutes prior to the homicide, and upon which the jury should have been instructed in regard to manslaughter. It was not necessary that an assault and battery causing pain and bloodshed should have occurred at the time of the exhibition of the knife and blowing of the smoke in the face of appellant. Nor is it necessary that the blow be actually struck. Bodily pain is not absolutely essential to constitute adequate cause in manslaughter, but any circumstance or condition which is capable of creating and does create sudden passion, such as anger, sudden resentment, rage or terror, rendering the mind incapable of cool reflection, whether accompanied by bodily pain or not, will constitute adequate cause. Childers v. State, 33 Texas Crim. Rep., 512; Williams v. State, 15 Texas Crim. App., 617. Adequate cause and the law of manslaughter should be charged upon another trial from both standpoints.

The question of threats was in the case by a considerable amount of testimony. The reputation of deceased was also adduced, showing it to be bad as a violent man, etc. The charge on threats was of that peculiar character, and perhaps even more so, than in Mitchel v. State, this day decided. It was in the negative form and given rather as a limitation upon the right of self-defense than in favor of appellant upon this issue. There seems to be a tendency in charging the law of self-defense and threats, of recent date to give all those matters in the negative and limited form, instead of affirmatively and favorable to the accused. Wherever an issue is in a case favorable to the accused, the law should be given in an affirmative manner, presenting that issue. It may be further remarked that the presumption of innocence and reasonable doubt should never be lost sight of in the admission and rejection of testimony and in the charges given upon issues made in the case. To limit those issues unfavorable to appellant, or give them in a negative form practically obliterates our statutory provisions along those lines. For a discussion of these charges, see Sebastian v. State, 42 Texas Crim. Rep., 84; Cline v. State, 71 S. W. Rep., 23.

The charge on self-defense is criticised as not applying the law to the case, and cutting defendant off from the right of appearances of danger as well as violative of the statute in regard to the law of threats. To illustrate, paragraph 27 of the charge is, as follows: "Now, keeping the foregoing instructions in view, if you believe from the evidence that the defendant shot with a pistol C. C. Chandler, and thereby killed him, but also believe that the killing took place under circumstances from which it reasonably appears to defendant by the acts, or by words coupled with the acts of Chandler, that it was the purpose and intent of Chandler unlawfully to kill the defendant, or to inflict upon him some serious bodily injury, and that the killing took place while Chandler was in the act of inflicting such death or

serious bodily injury upon defendant, or after some act done by him showing evidently that it was his intent and purpose to inflict such death or injury upon defendant; or that Chandler had previously threatened to take the life of defendant or to inflict on him some serious bodily injury, and at the time of the killing, by some act then done by him, manifested an intention to execute the threat so made, or if from the evidence you have a reasonable doubt as to whether or not such is the truth of the case, you will find the defendant not guilty. You will observe that this last foregoing instruction is applicable to the supposed case that deceased was making an attack with a knife, and that such knife was, or reasonably appeared to defendant, to be an instrument capable and likely to inflict upon him death or serious bodily injury, but is not applicable if Chandler was not or did not reasonably appear to be using a knife, or if it was a knife, but was such as was not capable and likely to inflict death or serious bodily injury, and defendant knew this fact, then said instruction would not be applicable, and you would apply the other rule of self-defense above given you in which the defendant, to invoke self-defense, must have resorted to all other reasonable means, except retreat, to protect himself, before killing deceased." We have perhaps stated sufficiently the evidence to show that appellant's right of self-defense was appearances of danger. The jury may not have believed that deceased was advancing with his open knife, as appellant indicates from his testimony, but there is testimony independent of appellant's, while on the stand, to the effect that he was advancing, and that he was making a demonstration as if to draw a knife or pistol. He had just drawn a knife on appellant, blown tobacco smoke into his face; he had threatened appellant's life on more than one occasion; he was a dangerous man, and a man who would execute a threat when made. Now this charge seems to limit appellant's right of perfect self-defense to the fact that deceased was advancing on him with an open knife, and not only so, but required appellant to believe that the knife under the excitement of such an engagement by an advancing foe of the character described by the witnesses, at night, was of such a character that he could only inflict death or serious bodily injury in order to exercise his right of self-defense. This would not only limit his right of self-defense to actual danger, but an actual danger measured by the size and quality of the knife seen in the dark in the hands of a dangerous foe. We do not believe that a more restrictive charge even on actual danger, could well have been given. It eliminates the question of apparent danger entirely from the case. If the jury did not believe appellant's testimony, then the question of deceased advancing on appellant and reaching for his knife or somewhere on his person as if to get a weapon of some kind was eliminated as a question of perfect self-defense. It is true that the jury are told that, if the deceased did not have a knife in his hand for the purpose of inflicting death or serious bodily injury upon

defendant, and was advancing on him, then appellant would have to resort to all other means to avoid a difficulty except retreat, when the facts showed that he had already retreated. This limitation on self-defense was not authorized by the evidence, and the giving of it was error. Brady v. State, 65 S. W. Rep., 521; Phipps v. State, 34 Texas Crim. Rep., 560; Graham v. State, 61 S. W. Rep., 714. The charge on resort to all other means except retreat is not authorized by the facts.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, absent.