Lizzie Ross alias Lizzie Wells, alias Lizzie Caldwell v. The State.

### No. 4333.   Decided March 18, 1908.

**1.—Assault With Intent to Murder—Charge of Court—Cooling Time.**

The question of cooling time, is one of reasonable time, depending upon all of the circumstances of the particular case, and in a majority of cases is one peculiarly within the province of the jury to determine. Following Eaneas v. State, 10 Texas Crim. App., 421.

**2.—Same.**

Cooling time is not a matter of law; the condition of the mind is not a question of time or law, but one of fact to be left to the determination of the jury. Jones v. State, 33 Texas Crim. Rep., 492; Watson v. State, 50 Texas Crim. Rep., 171; 16 Texas Ct. Rep., 587; Armstrong v. State, 50 Texas Crim. Rep., 26; 16 Texas Ct. Rep., 519.

**3.—Same—Case Stated.**

Where upon trial for assault with intent to murder, the evidence showed that defendant and prosecutrix had a fight probably not more than five minutes before the alleged assault; that prosecutrix struck defendant on the head with a hatchet, causing bloodshed; that they separated, and in a few minutes the defendant returned and renewed the difficulty, the court should have charged on cooling time; and a charge that if defendant returned to renew the difficulty, she would neither be excused nor justified by any previous difficulty between her and the prosecutrix, was reversible error.

Appeal from the District Court of Jefferson. Tried below before the Hon. W. H. Pope.

Appeal from a conviction of an assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*B. E. Moore,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant is a negro woman of many aliases. She was charged in the District Court of Jefferson County with an

assault upon one Emma Gardner. According to the testimony of Emma Gardner, appellant made upon her, on the night of the 21st day of October, 1907, four different and distinct assaults, in one of which appellant cut her severely with a razor. That appellant did assault Emma Gardner and severely injure her is shown by all the testimony. It is claimed, however, by appellant that before the commission of the assault that Emma Gardner had struck her with a hatchet, and cut her three times in the head before she had done anything at all, and that her visit to Emma's house at the time Emma claims to have been hurt was for the purpose of getting a hat which she had left there at the time she claims Emma hit her with a hatchet.

The only question raised in a motion for a new trial, which we can review, is that embraced in the third and fourth grounds of the motion for a new trial. They are as follows: 3rd. "The court erred as a whole in the charge to the jury, and did not correctly charge the law called for by the testimony. 4th. The evidence having shown without question that when defendant assaulted Emma Gardner with a razor and cut said Emma, that just previously thereto, only a few minutes elapsing, defendant returned and renewed the attack, bleeding and crying from her wounds, the court should have charged on cooling time, but instead the court told the jury outright, defendant could not be justified in renewing the attack." We think the substantial complaint raised by these assignments is sustained by the record. The court did not charge at all on cooling time, but did give the following instructions: "If the defendant and Emma Gardner had a fight or personal combat and they were separated, either voluntarily or otherwise, and that the defendant returned and renewed the difficulty with the intent to make an assault with intent to murder Emma Gardner and had a deadly weapon with which she made the assault, then she could not be excused or justified by any previous difficulty between them." We have quoted the charge as contained in the record. It is probably not copied with literal fidelity. The appellant testified in her own behalf on the trial, that after Emma Gardner had applied the most horrible epithets to her, that "she run into the room where I was, with a hatchet and cuts me three times on the head before I could ever do anything at all, and the blood was dropping like water off a house and you could track me all the way from Wall street down to the corner of Sabine and Fannin by the blood. Well, I goes down to the dyeing and cleaning shop, where I was working at Mr. Houks, and I gets me a dress, but I leaves my hat up to Emma's. I lost my hat in the scuffle, and I thought about it, and I goes back to get my hat out of the house, and when I went in again she strikes me in the head with the hatchet." By the testimony of E. S. Asbury, it was shown that before appellant cut Emma Gardner with a razor, that he saw her when she came to the place where she was working to change her dress, and that she was bareheaded when she came in; that she told witness that Emma had struck her, and that she was bleeding right smart; that the blood was all pouring down her

face. It was shown by other testimony, that there was an interval of probably not more than five minutes from the time appellant left Emma Gardner's house to go to the dye works before she returned and renewed the difficulty. It has been said, in discussing the matter of cooling time that, like the provocation itself, it must depend upon the nature of man and the laws of the human mind as well as upon the nature and circumstances of the provocation. That no precise time, therefore, in hours or minutes can be laid down by the courts as a rule of law within which the passions must be held to have subsided and reason to have resumed its control, without setting at defiance the laws of man's nature, and ignoring the very principle on which provocation and passion are allowed to be shown in mitigation of the offense. The question is one of reasonable time, depending upon all the circumstances of the particular case, and in a majority of cases is one peculiarly within the province of the jury to determine. Eaneas v. State, 10 Texas Crim. App., 421; Hobbs v. State, 16 Texas Crim. App., 517. Again, it is said cooling time is not a matter of law. The condition of the mind is not a question of time or law, but one of fact to be left to the determination of the jury. Jones v. State, 33 Texas Crim. Rep., 492; Watson v. State, 50 Texas Crim. Rep., 171; 16 Texas Ct. Rep., 587. In the case of Castro v. State, 40 S. W. Rep., 985, it appeared that the deceased had struck defendant in the mouth; that the parties were separated and not long afterwards the deceased approached defendant as if to assault him, but did not strike according to State's witnesses, and did strike according to defendant's witness; whereupon defendant shot the deceased. In this state of the case, it was held that the court should have charged upon manslaughter predicated upon the first assault, and in connection therewith should have charged on cooling time. See also Mundine v. State, 37 Texas Crim. Rep., 5; 38 S. W. Rep., 619, and the more recent cases of Watson v. State, 50 Texas Crim. Rep., 171; 16 Texas Ct. Rep., 587, and Armstrong v. State, 50 Texas Crim. Rep., 26; 16 Texas Ct. Rep., 519. This same doctrine is illustrated and supported by many cases in our court. Here the court not only did not give the doctrine of cooling time, or apply pertinently the alleged assault with the hatchet as determining the grade of the offense, if any committed, but in terms instructed the jury that, if appellant and Emma Gardner had a fight, and were separated and that afterwards appellant returned and renewed the difficulty, that she would neither be excused nor justified by any previous difficulty between them. This we think was not only erroneous, but in the nature of things was hurtful.

For the error stated, the judgment of the court below is reversed and the cause is remanded.

*Reversed and remanded.*