LON LEGGETT v. THE STATE.

No. 983.    Decided February 22, 1911.

Rehearing Granted April 19, 1911.

**1.—Assault to Murder—Statement of Facts—Practice on Appeal.**

On felony, the statement of facts must not be copied in the transcript but the original must be sent up with the transcript. But where it was shown on rehearing that by mistake the original statement of facts was not sent up, and that it was filed on time, the case will be considered on its merits.

**2.—Same—Evidence—Bills of Exception.**

Where testimony is offered by appellant and is excluded by the court below, the object and purpose of such evidence must be shown by bill of exceptions or it cannot be considered on appeal.

**3.—Same—Evidence—Bill of Exceptions—Practice on Appeal.**

Where, upon appeal, the bill of exceptions in the record is so indefinite that it does not show upon its face that there was error in admitting testimony, the same cannot be considered.

**4.—Same—Evidence—Harmless Error.**

Where it appeared from the record on appeal that the answers of the witness to the questions objected to were in no wise injurious to defendant, there was no reversible error.

**5.—Same—Argument of Counsel—Practice in District Court.**

Where, upon trial of assault to murder, the county attorney made the opening argument for the State, when defendant's counsel stated that he did not wish to make an argument, there was no error in permitting the district attorney to conclude the argument for the State. Following Vines v. State, 31 Texas Crim. App., 31.

**6.—Same—Charge of Court—Adequate Cause.**

Where, upon trial of assault to murder, the evidence showed that the prosecutor inflicted blows upon the defendant causing pain or bloodshed shortly before the alleged assault, the court should have submitted this issue to the jury.

**7.—Same—Charge of Court—Cooling Time.**

Where, upon trial of assault to murder, the evidence showed that the party alleged to have been injured, inflicted blows upon the defendant shortly before the alleged assault and which caused pain and bloodshed, the court should have submitted a charge on the issue of cooling time. Following Ross v. State, 53 Texas Crim. Rep., 277.

Appeal from the District Court of Rains. Tried below before the Hon. R. L. Porter.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*B. M. McMahan,* for appellant.—On question of not submitting aggravated assault: Foster v. State, 8 Texas Crim. App., 249; Griffin v. State, 40 Texas Crim. Rep., 312, 50 S. W. Rep., 366; Chatman v. State, 55 S. W. Rep., 346; Gallagher v. State, 55 Texas Crim. Rep., 50, 115 S. W. Rep., 46.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This conviction was for assault to murder, the punishment being assessed at two years confinement in the penitentiary.

The facts are copied into and sent up in the transcript, and can not, therefore, be considered. On motion of the Assistant Attorney-General the facts are stricken from the record, inasmuch as the statutes require that in felony cases the evidence shall be sent up separately from the transcript.

Appellant's first bill of exceptions recites that the appellant asked Hawkins if it was not a fact that he had had a great many difficulties with various parties in the neighborhood over gaming 'and other matters, and if he had not threatened to kill Henry Ivie, and if he had not made the threat that the next time he had any trouble with one of those negroes he would not fight with his fist, but would take his gun to them or would use it on them, and was then asked if he had not drawn a brick bat on Robert Gilmour and threatened to brain him, and if he did not strike John Hays over the head with a rail, all just prior to the alleged shooting. The State objected because the matters were irrelevant and immaterial, and the witness would have answered,

if permitted to do so, each of said questions in the affirmative. The purpose and object of this testimony is not stated in the bill of exceptions. Where testimony is offered by the appellant and is excluded by the court, the object and purpose of seeking such evidence must be shown by the bill, and usually such purpose must be stated. For the reason that the bill does not state the object and purpose of seeking to introduce this evidence, it is held that it does not sufficiently present the matter for revision.

2. Another bill shows that while McNeil was testifying, the district attorney, on cross-examination, asked him if "he was not shooting craps there that night, meaning the place where the game was shown to have been played." The witness denied playing. The district attorney was then permitted to prove by the appellant that he had been prosecuted and arrested, and was under bond for shooting craps that night. Appellant objected because this was immaterial, incompetent and improper, and because the credibility of the witness could not be attacked in such manner. This bill is rather indefinite and fails to show how this could have been injurious to appellant. It may have been that this character of testimony was legitimate in developing the matters incidental to and surrounding the trouble that night, if it is intended by this bill to state that the assault by appellant upon Hawkins was made on that occasion. It may have been legitimate further for the purpose of impeaching or contradicting this witness, but the trouble is, the bill is so indefinite that we are unable to tell whether from the face of it there was error in admitting the testimony. The court qualified the bill by stating that Hawkins had testified that this witness was in the crap game, and the witness denied it. The district attorney then asked the witness if he had not been arrested, charged with gaming on that particular occasion, and if he was not denying the fact that he played in order to keep from paying a fine. The court admitted this evidence, as he states, for the purpose of showing the witness' motive for thus testifying. As the bill presents the matter, we fail to see that there was sufficient error to require a reversal.

3. There is another bill of exceptions in regard to the testimony of the witness Shaw practically like the preceding bill and qualified in the same manner by the judge.

4. There is another bill which recites that Shaw, on cross-examination by the district attorney, was asked if it was not a fact that he had been prosecuted and had cases against him at Sulphur Springs, and if when he left that place he was not under bond and the bond forfeited. Objection was urged that this was irrelevant, immaterial, incompetent and prejudicial, and because the credibility of the witness could not be in this manner attacked. These objections being overruled, the witness denied leaving Sulphur Springs on account of any charges. He also denied that he was under bond, but admitted that he went away for about a year. The answer of this witness could in

no way, as far as we can see, be injurious to appellant. The matters were left as testified by the witness, so far as the bill shows; his denial that he left Sulphur Springs on account of these matters was not attacked by the State or sought to. be. attacked. The answers, we think, were in no way damaging. It may have constituted a predicate for the impeachment, but there the matter rested.

5. Another bill recites that Humphrey, the county attorney, made the opening argument for the State. At this point counsel for appellant informed the court he did not wish to make an argument. Whereupon the district attorney demanded and was accorded the right to make an argument for the State. Appellant objected and it is recited that the district attorney did make a lengthy and able argument. The court approved this bill by stating that when the evidence was. closed he asked the attorneys for both sides how much time was desired for discussing the case. After consulting among themselves it was announced to the court that they would take an hour and fifteen minutes. The county attorney, Humphrey, opened for the State. Appellant's counsel stated they did not desire to argue the case. The district attorney then proceeded to make an argument consuming the time allowed the State. In this there was no error. This direct question was decided adversely to appellant in Vines v. State, 31 Texas Crim. Rep., 31.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

April 19, 1911.

DAVIDSON, Presiding Judge.—At a former day of this term the judgment herein was affirmed without reference to the statement of facts, which was stricken out on the ground that it was not properly before the court. The statement of facts was stricken out because it was transcribed in the record proper and was not sent up separately from the transcript, that is, the original statement of facts was not sent up. Appellant moves for a rehearing, and shows to the court that the clerk omitted to send up the original statement of facts, but transcribed it in the record that was sent up without his knowledge. As the matter is now presented on the motion for rehearing, the original statement of facts is sent up showing that the evidence sent up in the transcript is a correct copy. It is also shown that the statement of facts was filed within twenty days from the adjournment of court, and that there was an order entered for that purpose. It is not clear whether this is a stenographic report of the evidence or not, but the statement of facts was filed within twenty days, and under any view of the law such filing was within time. Whether it should have been transcribed in the transcript, or sent up separately with the transcript, so far as this case is concerned, is wholly immaterial for the reason that under any view of the law the statement of facts

was filed in time, and we have the statement of facts before us, both the original and the copy in the transcript. We are of opinion, therefore, that the case should now be considered with the statement of facts before the court.

We do not care to review the bills of exceptions and matters considered in the original opinion. There is one matter, however, which we think entitles appellant to a reversal of the judgment.

Briefly stated, the facts show that on the night of the difficulty between appellant and the man he is charged with shooting, Ike Hawkins, there had been a social function among the negroes in the neighborhood, which lasted until about midnight. Appellant, Hawkins, and several other named parties went from the party to where Pearl Randolph's house had been burned. Two of the parties went in their wagon for the purpose of hauling some hogs away that were supposed to be in a pen. They were to take the hogs the following morning. Near by was a lake. Upon reaching the house the two parties controlling the wagon took their horses out and fed them. A crap game was inaugurated promptly. Ike Hawkins, the assaulted party, testifying for the State, placed several of the parties in the game. All the other witnesses state there were only three engaged in the game, Hawkins and appellant being two of them. After playing a short time trouble ensued between Hawkins and appellant with reference to a bet, appellant claiming to have won the money. Hawkins denied it and took the money. In a few moments another trouble arose between the same parties in reference to another bet, appellant remarking: "By God, I am a son-of-a-bitch if I didn't win the money." Hawkins suggested to him to go to the graveyard and dig up the dead body of his mother. Appellant told him not to speak of his dead mother, whereupon Hawkins engaged him in a personal combat, as the witnesses say, slammed him down against the ground and was beating him over the head with a chair bottom when they interfered and pulled him off of appellant. Some of the evidence is to the effect that Hawkins kicked appellant in the side. When they were separated Hawkins went to the hog pen nearby and got him a piece of rail about five feet long and appellant ran. Hawkins chased him about seventy-five or eighty yards, and as appellant was getting through the fence Hawkins struck him twice with the rail. These blows inflicted pain upon appellant. One of the blows on the head cut a gash from which the blood flowed, and the sheriff testified that appellant surrendered to him shortly afterwards on the same night, and the next morning he noticed the bruise or cut on the head and the hurt in the side. Hawkins left the scene of the trouble, stating that he would get his gun and come back and kill appellant. Hawkins was gone for some time, about sixty minutes, and returned with his gun. In the meantime appellant secured a gun. In this connection it may be stated that when appellant ran away he left his hat which he had lost in the difficulty. He explained

his return to the scene of the trouble by the fact that he wanted his hat. This was found and given him, and about this time Hawkins came upon the scene armed with a shotgun, and was standing off some forty or fifty steps. They all agreed that Hawkins called for one of the negroes by the name of Ennis McNeal. Hawkins says about that time appellant shot him twice from behind, and that after he fell he shot him in the eyes. All of the other witnesses testify that when Hawkins came appellant was standing talking to them with the end of his gun on the ground, and one or two witnesses state that it was the butt end of the gun on the ground. That when Hawkins called McNeal he raised his gun to his waist and appellant fired twice, and that there were only two shots fired. The facts seem to be undisputed that the gun was loaded with small shot, as indicated by the wounds on Hawkins. Hawkins dropped the gun when he was shot, and it was found there the next morning by the sheriff with the right barrel cocked.

The case was submitted to the jury upon the law of assault to murder, aggravated assault and self-defense. The jury convicted of assault to murder, and gave appellant two years confinement in the penitentiary.

The court, submitting the law of manslaughter with a view of submitting the further issue of aggravated assault, charged the jury in a general way that any circumstances which would render the mind incapable of cool reflection would form the basis of aggravated assault. Two exceptions are reserved to the charge in this connection: First, inasmuch as the statute authorizes a conviction of manslaughter, or failing in the homicide, of aggravated assault, with reference to blows inflicted causing pain or bloodshed, the charge was erroneous in not submitting it from this standpoint. While the shooting did not occur immediately in connection with the first fight in which appellant was struck on the head with a chair bottom and rail, we are of opinion the court should have instructed the jury in reference to this matter, and especially should this have been done in connection with a charge on cooling time. This brings up the second criticism of the court's charge in that the issue of cooling time was not submitted in any form. We think this is clearly erroneous. The evidence discloses that appellant had been beaten by Hawkins with a chair bottom and with a rail, and kicked severely in the side, and he was bleeding freely at the time of the shooting. This had occurred thirty to sixty minutes before the shooting. Unquestionably, this beating would have formed the predicate for manslaughter had the shooting occurred at the time. We are of opinion that a charge should have been given on cooling time in connection with this beating, which the evidence uncontradictorily shows caused both pain and bloodshed, and failing to give this charge under the circumstances of this case, the error requires a reversal of the judgment. Ross v. State, 53 Texas Crim. Rep., 277, and authorities cited.

The motion for rehearing is therefore granted, the affirmance set aside, and the judgment is now reversed and the cause remanded.

*Reversed and remanded.*